WILLIAM C. STEVENS v. EUGENE S. ELLSWORTH, Appellant.

**Non-Residence Defined:** FORCE OF FINDING OF FACT. A finding that there was such non-residence as to authorize an action *in rem* will not be disturbed when it appears that defendant and his family had been absent in Chicago three months, and that defendant opened an office and occupied a house there, though he left his furniture in his house in Iowa and he and his family state that he intended to be absent from the state but a short time.

**Attorney's Fees.** Upon suit to recover fees from a husband for setting aside a divorce obtained by him, neither the wealth of the husband, the poverty of the wife, or that the attorney relied on getting his pay from the husband should enter into determining the amount of the lawyer's recovery.

**SAME:** PRACTICE. And if experts are allowed to base testimony as to the value of such services, on the wealth of the husband, mingled

See Supplemental Opinion, 94 Iowa, 758.

5 . with other facts, the error is not cured by a charge which, in effect, excludes the wealth from the consideration of the jury. It cannot be known to what extent the testimony as to value rests on the wealth.

SAME. On the value of the services of a lawyer the success of litigation and difficulties to be overcome by him, may be considered.

**Expert Testimony.** In suit to recover from *a husband*, fees for services rendered his wife in divorce litigation, an Iowa lawyer cannot testify as an expert without showing that he knows what the rates charged for such services were where rendered.

*Appeal from Kossuth District Court.*—HON. GEORGE H. CARR, Judge.

FRIDAY, MAY 31, 1895.

Action by attachment to recover attorney's fees. Judgment for plaintiff, and the defendant appealed.—*Reversed.*

*J. C. Cook* for appellant.

*Geo. E. Clark* for appellee.

Granger, J.—Plaintiff is the assignee of an account of five thousand and ninety-five dollars from Charles A. Clark for the services of said Clark as an attorney. The defendant is the husband of Hattie A. Ellsworth. Ellsworth and his wife became involved in litigation in Hardin county, Iowa, and Clark was employed by his wife, and the fees sought to be recovered are for services in that suit. It may be well here to state some of the facts involved in the litigation between Ellsworth and his wife. In December, 1891, Ellsworth filed in the district court in and for Hardin county, Iowa, his petition asking for a divorce. Mrs. Ellsworth accepted service of the original notice, and in December, 1891, a decree was entered granting to Ellsworth a divorce and the custody of the children. In January, 1892, Mrs. Ellsworth employed Mr. Clark,

with other counsel, to institute proceedings to set aside
the decree of divorce. After service of a petition and
motion to set aside the decree as having been obtained
by fraud, and being only colorable, Ellsworth and wife
attempted a settlement, by which the decree was to
stand, and she was to have a certain amount of prop-
erty. Afterward Mrs. Ellsworth determined to pro-
ceed to set aside the decree of divorce, and issue was
taken, on the petition and motion, and among other
facts pleaded in resistance, was the attempted settle-
ment. This resulted in setting aside the decree of
divorce, and Ellsworth then dismissed his divorce pro-
ceedings. Mr. Clark, then, as attorney for Mrs. Ells-
worth, commenced proceedings for divorce against
Ellsworth on the ground of cruel and inhuman treat-
ment. After the service of the original notice, and
before the petition was filed, the parties became recon-
ciled, and the proceeding was dropped. It appears
that Mr. Ellsworth is a man of much wealth, and that
Mrs. Ellsworth has no means with which to pay her
attorney. In the year 1892, Mr. Clark filed his petition
in the district court of Hardin county to recover from
Mr. Ellsworth his fees, but because of Mr. Ellsworth's
absence in Chicago, Ill., he could not obtain personal
service of the notice of suit in Iowa, and on the nine-
teenth of August, 1892, he assigned the account to the
plaintiff, who is a resident of Chicago. On the twenty-
fourth day of August, 1892, the plaintiff filed his peti-
tion in attachment in the district court of Kossuth
county, from which court a writ issued, and certain
real estate was attached. The service was by publi-
cation, and also by personal service on Ellsworth in
Chicago. The personal service was made August 30,
1892. On the sixth day of September, 1892, Clark filed
a dismissal of the action commenced by him in Hardin
county. On the second day of September, 1892, Ells-
worth accepted service of the notice in the Clark suit,

but the notice was not received by Clark until after he had dismissed his suit.

I.   The defendant appeared in this suit in Kossuth county, and filed his motion to transfer the cause to Hardin county, on the ground that it was the county of his residence, which the court overruled, and error is assigned on the ruling.   Defendant, in support of this motion, filed affidavits of himself, wife, son, and some three others, residents of Hardin county. From these affidavits it appears that Ellsworth left Iowa Falls in June, 1892, to go to Chicago on business and pleasure, intending to be absent not to exceed three months; that, so far as his business there was concerned, he was only establishing in Chicago a branch office of the real-estate firm of Ellsworth & Jones, of Iowa Falls, of which he was a member; that all the furniture was left in the house at Iowa Falls, and the clothing of the family, except that for summer wear.   The house at Iowa Falls was vacant,—that is, unoccupied,—and the lawn was mowed by a colored man, not residing on the premises. The counter showing is by the affidavit of Mr. Clark, to the effect that he commenced his personal action against Mr. Ellsworth in Hardin county, and for some weeks attempted to get personal service, but could not do so, because of his absence in Chicago; that he was in Chicago with his family; that the directory of Chicago showed that Mr. Ellsworth was engaged in the real estate business, with an office at No. 521 Chamber of Commerce Building, and No. 98 North Kenzie avenue, and had a house at 521 Schiller street; that affiant had seen the office in the Chamber of Commerce Building, and that he believes, and did believe, that said Ellsworth was a non-resident of the state of Iowa.   There are some other facts made to appear that more or less affect the conclusion, but the foregoing are the principal ones.   Appellant's claim is that this

is a personal action, so as to come within the provisions of Code, section 2586. That section provides: "Except where otherwise provided herein, personal actions must be brought in a county wherein some of the defendants actually reside. But if none of them have a residence within the state, they may be sued in any county wherein either of them may be found." It seems to us that it is not a personal action, or was not when commenced, under the provisions of Code, section 2580, as follows: "An action when aided by attachment, may be brought in any county in the state wherever any part of the property sought to be attached may be found, when the defendant whose property is thus pursued is a non-resident of this state. If such defendant is a resident of this state such action must be brought in the county of his residence. * * *" Neither the service by publication nor the personal service in Chicago would give jurisdiction of the person so as to authorize a personal judgment. The action, at its inception, was one *in rem*. The situation of Mr. Ellsworth at the commencement of this suit was such that no other suit could be commenced against him in Iowa. His absence from the state with his family was such that neither a personal nor a substituted service could be made so as to render the action a personal one. His property in the state was the only basis of jurisdiction, and such a jurisdiction is only as to property. It gives no right to a personal judgment. On the question of fact as to the residence, we think the holding of the court is conclusive. The evidence is in conflict. It is true that, as to particular facts, there is no dispute, but as to the intention of Mr. Ellsworth in going to Chicago, under all the statements and facts, the conclusion is not a forced one that he had changed his residence. He had gone there, and taken rooms for his family for three months; had

opened offices for the transaction of real estate busi-
ness, and, as we understand, this business was not of
a temporary character.  It required the presence of
some one to conduct it, and the only inference is that
he would be the person.  The other conclusion—that
is, that he was a resident of Iowa, so that he could only
be sued in Hardin county—gives to a person situated
as he was a very superior advantage.  He can be
absent from the state with his family, doing a regular
business, and, because he may intend it to be tempo-
rary, his creditors must wait his pleasure for an oppor-
tunity to enforce payment through the courts.  It is
doubtful if the legislature ever intended, by the statute
in question, such a state of affairs.  But, however that
may be, his statements, and those of his family, are not
conclusive as to his intent nor as to the facts.  By this
motion he assumed the burden of showing that the
venue should be changed, and there is enough in the
facts to make the question one of doubt.  Independ-
ent of the statements of the family as to what was
intended, the facts would be a strong, if not quite con-
clusive, showing of residence in Chicago.  The state-
ments as to such intent ought not to be absolutely con-
trolling.  They may be considered with other facts,
and be credited or not, as the situation will warrant.
We think the residence contemplated by this statute
means actual residence.  It is, perhaps, not best nor
expedient to attempt to accurately define it, by saying
how long an absence from the state, in a way that a
personal action could not be commenced should, or what
should be the circumstances of such an absence to, fix
a non-residence.  The facts of particular cases will
vary so that it is best to leave it a question for consid-
eration upon facts as they arise.  We think the facts
of this case justified the finding by the district court.
Appellant cites, as a strong case in his favor, *Bradley
v. Fraser*, 54 Iowa, 289 [6 N. W. Rep. 203].  That

case involved a construction of Code, section 3507, as to the jurisdiction of justices of the peace, where it is held that one absent from the county to do a particular job of work in building a schoolhouse, and who boarded with his family at a hotel, intending to return when his job was completed, continues an actual resident of the county he left to do the work. There was nothing in that case to warrant any but the single conclusion, while in this it is different. There the business engaged in was fixed as to amount, and fairly limited as to duration. Besides, in that case, there was the opportunity to bring suit in the county of his actual residence, so that the rule applied is in no way obstructive of the rights of others.

II.   The issue on the trial of the case presented two questions: (1) Did Mrs. Ellsworth actually employ Mr. Clark? and, if so, then (2) what should be the amount of the recovery, which was to be a reasonable compensation for the service rendered? To establish this the plaintiff used as witnesses attorneys residing in Cedar Rapids, Des Moines, Dubuque, and Ft. Dodge, Iowa.   To each of such witnesses was submitted a hypothetical form of question, which, because of its length, we cannot well set out, for it covers some thirteen pages of abstract. The first paragraph of the question is as follows: "Q. 5.   This action is brought to recover compensation and expenses for services of the said Chas. A. Clark, rendered Mrs. Hattie A. Ellsworth, wife of the defendant, Eugene S. Ellsworth, in a certain suit for a divorce brought by the defendant, Eugene S. Ellsworth, against his said wife, in the district court of Hardin county, Iowa. The original notice in said action by the defendant, Eugene S. Ellsworth, against his said wife, had acceptance of service thereof indorsed thereon, and signed by his said wife in her own

handwriting, and dated November, 16, 1891. The petition for a divorce in said action purported to be sworn to by the defendant, Eugene S. Ellsworth, and on the sixteenth day of November, 1891, before his attorney, C. M. Nagle, as a notary public of Wright county, Iowa. Said petition was filed in the district court of Hardin county, Iowa, December 2nd, 1891. On the fifteenth day of November, 1891, upon the default of his said wife, the defendant, Eugene S. Ellsworth, secured a decree of divorce against his said wife, giving him the custody of two children of their marriage, and cutting off his said wife, without alimony, from all interest in and to the property of the defendant herein, Eugene S. Ellsworth." Then follows a statement of facts claimed to have such support in the evidence as to render them proper, with reference to the suit in which Clark was employed, and the question continued as follows: "Upon the hypothesis that the foregoing statement of facts is correct, taking into consideration the fact that Mrs. Ellsworth herself attached her own signature to acceptance of service of the original notice in the original divorce proceedings, and the difficulty of proving fraud and duress in that behalf, with the defendant herein, and his attorney, Nagle, both as witnesses against her, touching that transaction, and taking into consideration the fact that she was without means to prosecute her petition and motion for a new trial, and that her attorneys were compelled to and did rely upon securing compensation from her husband, the defendant herein; and also taking into account the settlement which Mrs. Ellsworth made with her husband pending her petition and motion for a new trial, and the questions of law involved in and raised by that settlement, and also taking into account the depositions taken by Ellsworth, the defendant herein,

to show his wife guilty of infidelity, and the questions of law involved in the motions to suppress said depositions, and also taking into account the wealth of the defendant herein, as already stated, and the question of alimony involved in case of a divorce from his wife, and of the other facts and circumstances set forth in the foregoing statement of facts,—state * * * what, in your judgment, is a fair and reasonable compensation in gross for the services rendered by the said Clark on behalf of Mrs. Ellsworth in the litigation aforesaid, taking into consideration all the facts and circumstances above set forth, and the magnitude of the interests involved, and the success attained?" Objections were interposed to the question, which were overruled, and in argument it is urged that the question is erroneous, because it permitted the jury to take into consideration in estimating the value of the service "the results attained by the suit." The court, in stating what the jury could consider in fixing a reasonable compensation, among other things, said: "The time spent in the preparation for and trial of the cause, and the results attained." In the same instruction it is said: "By the expression 'results attained,' as used in this instruction, I mean the success or non-success of the litigation, and not the ultimate benefit to the client." It is argued that the expression in the question as to results attained would be understood by the witnesses and the jury to mean "the ultimate benefit to be derived by the defendant's wife;" but we think the limitation on its meaning as placed by the court avoids any objection to the question in that respect. That it is proper to consider the success of the service rendered in fixing a reasonable compensation is not open to question.

III. The question is claimed to be objectionable, because it permitted the witness and jury, in estimat-

ing the compensation, "to consider the wealth of the defendant." The court, in an instruction, said to the jury: "In arriving at the reasonable compensation to be allowed the plaintiff for the services of the said Chas. A. Clark, you cannot take into consideration the fact, if it be a fact, that he relied upon securing his compensation for such services from this defendant, and the reasonable compensation for the services actually rendered cannot be enhanced or increased by reason of such fact." The instruction fixed the law of the case on this trial, and its effect is to take from the jury the facts as to the wealth of the defendant. Referring to the question, it will be seen that one of the facts specified to be considered in making the estimate of compensation was the wealth of the defendant. The objection to this question, which was overruled, makes specific mention of the fact, and the witnesses answered the question with that as an element that might enhance the compensation. If it could be said that the instruction cured the error in the ruling on the objection to the question as to the jury, still it remains that the estimates of the witnesses were made with this express direction in the question: "Also taking into account the wealth of the defendant herein, as already stated." The wealth of the defendant as stated was "nearly or quite the sum of five hundred thousand dollars." If the record is divested of the expert evidence based on the hypothetical question, the finding has no sufficient support. But we do not think the instruction cured the error in ruling on the evidence as to the jury. The particular fact we are considering was mingled with a great multitude of other facts on which the expert witnesses made their estimates, and the jury could have no idea of the importance given by the witness to any particular fact; and, even if that could be done, the cause was submitted

as if the evidence was properly admitted. The court limited, by an instruction, the effect of some other evidence, but no reference was made to that in question, and it stood before the jury as proper evidence. In view of further proceedings in the case, we may properly say that we regard the instruction that the wealth of defendant cannot be considered to enhance the amount of compensation as correct. Appellee cites the case of *Lombard v. Bayard,* 1 Wall. Jr. 196, [Fed. Cas. No. 8,469],—a case in the United States circuit court,—in which Mr. Justice Grier uses this language: "Every gentleman of the bar well knows that there cannot be any one rule of charges in the nature of a horizontal tariff for all cases. Often, where the parties are poor, and the matters in contest small, counsel receive but very inadequate compensation for their exertion of mind and body; and, for myself I know that some of the most severe labors of my professional life have been the least well paid. In other cases, where the parties are wealthy, and the sum in controversy large, they will receive a tenfold greater compensation for a tithe of the same labor. In some cases the whole sum in dispute would be poor compensation; in others, five per cent. of it will be very liberal. Hence, in all cases professional compensation is gauged not so much by the amount of labor, as by the amount in controversy, the ability of the party, and the result of the effort." That case dealt with the question of the compensation of an auditor, who was an officer of the court, and for whom no fees were prescribed. What is said as to professional services is in the way of an illustration, and we do not understand the learned justice to say that the ability of a party to pay may enhance the fact of a reasonable compensation for a service, but he makes a reference to the profession, which is true, and he speaks of cases in which

VOL. 95 Ia—16

"the parties are wealthy, and the amount in contro-
versy large," where the greater fees are paid.    The
thought seems to have been that, with that class of
clients, cases are found where large fees are justified
because of the actual value of the services rendered.
We think no court has ever said that, with the facts
the same, a reasonable compensation for a professional
service for a poor man is worth less than the same serv-
ice for a rich man.    It is likely true that less is often
taken from the poor than from the rich, but the reason
is not because of a difference in what the service is
reasonably worth, but because of a disposition of pro-
fessional persons to charge less in such cases, even to
the extent, in some cases, of making a gratuity, or a
mere trifle.    The practice is to be commended, but not
under a rule that they may, while thus giving to one,
take, because of that fact, from another.    If it is the
rule that fees may be enhanced because of the wealth
of the client, we do not see why, in a case where the
client is poor, that the fact may not be shown to lessen
the compensation, and such a rule has never obtained.

IV.    It is further urged against the question that
it permitted the witnesses to take into consideration
the facts that Mrs. Ellsworth was without means to
prosecute her petition and motion for a new trial, and
that her attorneys were compelled to and did rely
on securing compensation from her husband.
We do not see how these facts in any way affect
the question of the amount of compensation to be
paid.    The service is in no way affected by them,—that
is, made greater or less.    The court said to the jury that,
in fixing a reasonable compensation, it could not con-
sider the fact that plaintiff relied upon securing it
from the defendant.    If the service was rendered for
one able to pay, and it was to be paid for by one less
able, or of doubtful ability, there would be a greater
reason for permitting that fact to influence the amount.

But such facts do not affect the value of the services. The value of the service depends on the amount and character of the service and the results attained.' The question, with such facts included, should not have been permitted.·

V. There is further complaint that the question includes the facts that Mrs. Ellsworth signed the acceptance of service in the divorce case, and that it was more difficult, because of that fact, to prove the fraud and duress. Those facts went to show the character of the service rendered; that is, the difficulties to be met and overcome, which, with the success of the litigation, tended to show the merit or value of the service. In this respect there was no error.

VI. There was further objection that the testi mony of the expert witnesses did not show that they were acquainted with the value of such services in Hardin county and vicinity, where the services were rendered. We think the objection in this respect was well taken in a case of this character. It is not necessary that we should determine the question of what should be the rule where a person employs an attorney residing at a distance to go to another place to render services for which the employer is to pay, but where, as in this case the compensation is to come from a third party, under a rule of law that it is a necessary expense, no more than what is neces-' sary should be allowed, and that should be no more than what the service was reasonably worth where it was rendered. The law fixed the place where Mrs. Ellsworth must bring her suit or institute her proceedings, and she was entitled to a reasonable legal service for which her husband must pay a reasonable compensation, which means a reasonable compensation as fixed by the practice of the place where the service was rendered. Fees for legal serv-

ices vary greatly, being in some localities much more than in others. These expert witnesses lived, as we have said, in cities in different parts of the state, and the compensation fixed by them was likely measured by charges where they were familiar with the practice. At any rate, it does not appear that they knew the rates charged in Hardin county or vicinity, so as to be competent to testify as to the value of services rendered there. Because of the errors indicated the judgment is *reversed.*