WILL OF WILLING: WILLING and others, Appellants, vs. BAYER, Executor, Respondent.

*April 7—June 21, 1926.*

*Executors and administrators: Attorney's fees: Amount: Supervision by court: Evidence: When executor may retain counsel: For what purpose.*

1. The rule that the testimony of those familiar with the value of services cannot be wholly disregarded where such value is not common knowledge is inapplicable where the court is required to pass on the reasonable value of the services of the attorney for an executor.  p. 412.

2. It is the duty of courts having supervisory control over administrators, executors, guardians, and other trustees, to scan the accounts rendered, and on their own motion to determine that items charged as expenses are proper and that the expense was necessarily incurred in the administration of the trust.  p. 412.

3. Where there is no express contract for fees in the probate of an estate, an attorney may recover the reasonable value of the services rendered. p. 413.

4. In determining what is a reasonable allowance to an executor's attorneys, there may be taken into account the amount and character of the services, the labor, time, and trouble involved, the nature and importance of the litigation, the age, experience, and standing of the attorney, the result of the litigation, and whether the fee is certain or on a contingent basis. p. 413.

5. It is the duty of an executor to carry out the terms of the will, and he may properly incur expense for legal services only when he cannot safely proceed further without the advice of counsel; but he is not expected to prepare papers relating to court proceedings. p. 414.

6. The inheritance of property is a right and not a privilege, and the powers granted to county courts in the administration of estates constitute a public trust. p. 415.

7. The fee of an executor's attorney should not be based entirely on the value of the estate, nor should it include an allowance for the time expended in performing duties which the executor should have performed. pp. 417, 418.

8. An executor's account for counsel fees should disclose the nature of the services rendered, the time expended, and any other element necessary to a proper determination of the amount to be allowed. p. 418.

APPEAL from a judgment of the county court of La Crosse county: R. A. RICHARDS, Acting Judge. *Reversed.*

John E. Willing, Sr., died testate on the 11th day of December, 1924, in the city of La Crosse. His last will and testament was offered for probate. John F. Doherty was appointed guardian *ad litem* for John B. Willing and Virginia Willing, minors, grandchildren of the deceased.

On the 13th day of January, 1925, the will was admitted to probate. No objections were made to the will or its probate and the proceedings were brief and formal. There was no contest of any kind. The general inventory of the estate showed personal property of the sum of $29,193.30, consisting of cash, certificates of deposit, bonds, and notes, with the exception of a small amount of household goods appraised at $500. In addition to the personal property

there was real estate of the value of $39,000. *John A. Bayer* qualified as executor. There were practically no claims against the estate, there being but three items amounting to $261.02. On the final accounting the executor was given credit for $100 paid to the guardian *ad litem*, for $1,500 paid to attorneys for the executor, and the executor was allowed, in accordance with the statute, $352.40 for *per diem* and commissions. Final judgment was entered approving the executor's account containing the above items, and from that judgment the residuary legatees appeal.

For the appellants there was a brief by *O. J. Swennes* of La Crosse, attorney, and *E. F. Cadwell* of Tulsa, Oklahoma, of counsel, and oral argument by *Mr. Cadwell.*

For the respondent there was a brief by *McConnell & Schweizer* of La Crosse, and oral argument by *C. H. Schweizer.*

ROSENBERRY, J.    The sole question raised upon this appeal relates to the amount allowed by the trial court to the executor as necessary expenses incurred by him for legal services rendered in connection with the administration of his trust and the amount paid to the guardian *ad litem*. Because of remarks made in the course of the oral argument here to the effect that any criticism or diminution of the amount charged would reflect upon the character and professional standing of the attorneys for the executor, we shall say at the outset that the attorneys for the executor are men of high character, long and successful experience at the bar and unusual legal attainment, and they have the complete confidence of this court and each and every member of it. What is said here is said because the court feels that under the circumstances disclosed it is its duty to indicate some general considerations which ought to govern trial courts, and particularly probate courts, in passing upon amounts charged by attorneys for services rendered

to executors, administrators, guardians, or other trustees. A further reason for this course is found in the fact that in recent years there has been a marked change in the judicial polity of the state with reference to the administration of estates. Prior to the enactment of ch. 183 of the Laws of 1919 the orders and judgments of county courts were subject to review by the circuit court. This enabled contested matters to be disposed of speedily and inexpensively. At the present time, except in counties having a population of 15,000 or less, appeals no longer lie from the orders and judgments of county courts to the circuit court but must be taken directly to this court. Obviously this imposes upon county courts a new and heavier responsibility and invests them with judicial power and dignity in many of its aspects quite comparable to that vested in the circuit court. Causes removed from the county courts to this court stand here upon the same footing as causes removed from the circuit courts to this court. The same weight attaches to the findings and conclusions of the county court that attaches to the findings and conclusions under like circumstances in the circuit court. There cannot be a trial *de novo* in this court, and the rights of parties are often determined finally by the county court.

It is not so many years ago (1907) that the judges of county courts were not required to be men learned in the law. Since that time, in the more populous counties of the state at least, county judges are required to be attorneys of a court of record. These changes in the policy of the state with reference to county courts no doubt grew out of the rapidly increasing importance of the jurisdiction exercised by them. In an earlier day, particularly in the more sparsely settled counties, estates were of small value and their administration was not a matter of great complexity. With the increasing value of estates, accompanied by many incidents rendering the administration much more intricate

and complex as well as appearance of the inheritance and income taxes, the administration of an estate can no longer be regarded as unimportant.   With these observations, which are made so that it may be understood that what is here said is addressed not only to the facts presented in this case but to a situation which appears to be rapidly developing throughout the state, we proceed to a consideration of the issues raised by the appellants.

In the bill rendered to the executor the services rendered were itemized as follows:

"To retainer and services in the matter of the last will and testament of John E. Willing, Sr., conference with executor and Mrs. Cadwell, examination of safety-deposit box in Batavian National Bank and listing contents, obtaining data for petition for probate of will, draft petition for probate of will, order of hearing, notice of hearing and to creditors and publishing same, filing proof of publication, attendance in county court at hearing for probate of will, draft appointment of guardian *ad litem,* draft proof of will not contested, draft decree admitting will to probate and certificate of probate, draft application for bond of executor, draft bond of executor and copy, attending execution of bond and filing same, draft letters testamentary, draft general inventory and warrant of appraisers, oath of appraisers, and securing appraisal;

"Examining claims filed, investigating same and draft judgment on claims;

"Conferences with John Doherty, guardian *ad litem,* and county judge, and considering construction of seventeenth paragraph of the will;

"Draft checks for payment of specific bequests, draft letters to legatees transmitting checks in payment of bequests, draft receipts for bequests;

"Draft copy of will and certificate of probate and having the same certified and recording same;

"Draft checks in payment of funeral expenses and debts allowed by court;

"Investigating state income tax payments, securing data and draft returns for state income tax for 1924 and 1925;

"Investigating federal income tax returns and securing data, and drafting returns for federal income taxes for years 1917, 1919, 1920, and 1921, and paying amounts in default and penalties;

"Draft preliminary notice to collector of internal revenue in respect to federal inheritance taxes, draft final report of federal inheritance taxes and paying same, draft letter to collector requesting immediate examination of return and final determination of federal income tax, draft final order determining state inheritance tax, draft executor's final account and petition for allowance of same and construction of the seventeenth paragraph of will and assignment of estate; draft order of hearing, draft notice of final settlement and publishing same, draft notice of determination of state inheritance taxes and mailing same to the public administrator and Wisconsin state tax commission and draft proof of mailing, draft amended final account, draft final judgment assigning estate and recording same.

"Consultations and conferences with executor from time to time, counsel in regard to various matters, and all services in connection with said estate,—$1,500."

The court allowed the claim at the full amount, $1,500. The claim was supported by testimony given by one of the attorneys and three other practicing attorneys. It appears without dispute from the testimony that the services were performed by an attorney sixty years of age, admitted to the bar in 1887, who had practiced law in La Crosse county for thirty-eight years, of high character and excellent reputation, and it appears without dispute from his testimony and the testimony of other witnesses that the reasonable value of the services was from $1,500 to $2,000. In its memorandum decision the trial court said:

"Under the law it is for the court to finally decide what fees should be allowed to the executor to compensate the attorney employed by him to conduct the affairs of the estate; objection having been made to the amount claimed, it became an issue upon which evidence was produced. I presume the court is bound in this case by the weight of the

evidence and has no discretion warranting an arbitrary ruling in this matter, but I feel that the minimum amount charged as attorney's fees in conducting the affairs of this estate are somewhat excessive, but based upon the evidence produced in the hearing, which seems to establish what is claimed to be a reasonable compensation in such matters in this jurisdiction, I shall find that the executor should pay to McConnell and Schweizer the fee of $1,500 claimed by them as attorney's fees."

While it is the law that in cases where the value of services is not a matter of common knowledge neither the court nor the jury can wholly disregard testimony of those who are familiar with the value of such services (*Tullgren v. Karger,* 173 Wis. 288, 181 N. W. 232), that rule has no application where the court is required to pass upon the reasonable value of attorneys' services. The judge of the county court of La Crosse county is a lawyer. As such the value of services rendered by attorneys to executors or trustees is a matter within his knowledge and experience and he is not concluded by the testimony offered in support of the claim; so that it is quite apparent that the trial court acted under a mistake of law. *McMannomy v. C., D. & V. R. Co.* 167 Ill. 497, 47 N. E. 712; *Gilbert v. Lloyd,* 170 Ill. App. 436. See, also, *Dinkelspiel v. Pons,* 119 La. 236, 43 South. 1018; *Larscheid v. Kittell,* 142 Wis. 172, 125 N. W. 442, and cases cited.

It is the duty of courts having supervisory control over administrators, executors, guardians, and other trustees to scan the accounts rendered and upon their own motion to determine that the items charged as expenses by the trustees are proper items of expense and that the expense was necessarily incurred in the administration of the trust. *Will of Rice,* 150 Wis. 401, 476, 136 N. W. 956, 137 N. W. 778; *Watkins v. Sedberry,* 261 U. S. 571, 43 Sup. Ct. 411.

It is not so long ago that it was considered unprofessional for attorneys to charge a fee, and that is still the rule in

Will of Willing, 190 Wis. 406.

England with reference to counselors, advocates, and barristers. In this country, as well as in Canada, all branches of the legal profession are entitled to a fair compensation for services rendered and may recover therefor either upon express or implied contract. We do not consider here whether or not an executor or administrator can bind the estate by an express contract, fixing the amount of attorney's fees to be paid. There was no such contract in this case. Where there is no express contract, the attorney may recover the reasonable value of the services rendered. No rule of thumb can be laid down which will enable an amount to be fixed in every case which constitutes reasonable and just compensation. It is well established that in determining the amount of reasonable compensation there may be taken into account the amount and character of services rendered, the labor, time, and trouble involved, and nature and importance of the litigation or business in which the service was rendered, the responsibility imposed upon the attorneys, the value of the subject matter of the controversy, the skill and experience called for in the performance of the service, the age, experience, professional character and standing of the attorney, the result of the litigation, and whether or not the fee is certain or contingent. 9 A. L. R., note, p. 237; 6 Corp. Jur. § 331, p. 748 *et seq.,* and cases cited.

There is also a distinction pointed out in *Forsyth v. Doolittle,* 120 U. S. 73, 7 Sup. Ct. 408, between strictly professional services and services of a related but nevertheless nonprofessional character. The court by Mr. Justice FIELD said:

"The services for which compensation is sought were not only those required of attorneys and counselors at law, but were also those of negotiators seeking to accomplish the result desired, by consultation with proposed purchasers, and presentation to them of the advantages to be derived from the property, present and prospective. Varied

as were the legal services of the plaintiffs, it is plain from the testimony that those rendered by negotiation and consultation, and presentation of the uses to which the property could be applied, were far more effective and important. This fact necessarily had a controlling weight in estimating the value of the services. It is difficult to apply to such services any fixed standard by which they can be measured and their value determined, as can be done with reference to services purely professional. There is a tact and skill and a happy manner with some persons which render them successful as negotiators, while others of equal learning, attainments, and intellectual ability fail for the want of those qualities. The compensation to be made in such cases is, by the ordinary judgment of business men, measured by the results obtained. It is not limited by the time occupied or the labor bestowed. It is from overlooking the difference in the rule by which compensation is measured in such cases, and that in cases where the services are strictly of a professional nature, that several objections are urged for reversal of the judgment recovered, which, if this difference were regarded, would not be seriously pressed." *Dockery v. McLellan,* 93 Wis. 381, 67 N. W. 733.

This brings us to a consideration of the duties of an executor or administrator of an estate. Certainly an executor cannot proceed with the execution of the trust confided in him by the will by turning over to attorneys employed by him the execution of the trust, he taking compensation allowed as executor and charging the estate the compensation paid to the attorneys, thus creating a double charge against the estate. It is the duty of the executor to carry out the terms of the will, and it is only when he cannot safely proceed further with the execution of the will without the advice of counsel that he may properly incur expense for legal services. He should not be expected, of course, to prepare papers relating to court proceedings. On the other hand, he should transact ordinary business connected with the estate without the aid of attorneys. That is what he is paid for. Apparently the ex-

ecutor in this case did very little although he was awarded
a fee of over $300. If men do not care to accept appoint-
ment as executor under the will and perform the duties
charged upon them by law for the compensation fixed, they
ought not to undertake it.

The bill rendered to the executor in this case discloses
no time element. The service which the executor was
authorized to engage was a strictly professional service.
It is not the business nor office of attorneys to manage or
control the estate, but, in cases where that is necessary, to
assist the executor to do so. We are unable to determine
with reasonable exactitude the amount of time necessarily
expended by the attorneys in rendering professional serv-
ices to the executor. While time and labor may not in
every case be a definite factor, they certainly are a dominant
factor in the matter of services rendered to an executor or
other trustee. In this state inheritance of property is a
right and not a privilege, and the powers granted to county
courts in the administration of estates constitute a public
trust. Parties are required by law, in order to receive that
to which they are entitled, to apply to a probate court.
The process ought not to be made burdensome or unduly
expensive. While every one of the elements mentioned as
being properly taken into account in fixing the amount of
reasonable compensation should be considered if present,
to charge a lump sum based almost entirely upon the value
of the estate is to make a single factor controlling and
ignore others. While the amount involved should be con-
sidered in determining the reasonable value of professional
services rendered to an executor it is only one element,—
the skill and experience of the attorney, the time and labor
expended by him, the ordinary and usual *per diem,* com-
pensation charged by attorneys for like services, are im-
portant factors. If the administration of this estate took
five days of time, and it seems improbable it would have

taken more because there was no contest, then the services were at the rate of $300 a day. If it took twice that time, or ten days, then they were at the rate of $150 a day. While the court recognizes the fact that attorneys' fees have followed the modern price trend and are now considerably larger than they were ten or fifteen years ago, it seems doubtful whether any considerable number of attorneys would expect to receive $150 a day for services in a probate proceeding. To say that the just and reasonable value of services is determined by the amount of the estate is to ignore the distinction pointed out in *Forsyth v. Doolittle*, 120 U. S. 73, 7 Sup. Ct. 408. In probate proceedings the compensation for legal services rendered should be limited to those of a strictly professional character. The amount of time consumed is important; likewise the experience and skill of the attorney. If an estate is probated under the direction of an experienced, well known attorney, the marketability of the titles passing through probate court is improved. The amount involved should be taken into account. There seems to be a common idea that merely because the amount is large, persons rendering professional services are entitled to charge a proportionate amount.

In *Stevens v. Ellsworth*, 95 Iowa, 231, 63 N. W. 683, it was said:

"We think no court has ever said that, with the facts the same, a reasonable compensation for a professional service for a poor man is worth less than the same service for a rich man. It is likely true that less is often taken from the poor than from the rich, but the reason is not because of a difference in what the service is reasonably worth, but because of a disposition of professional persons to charge less in such cases, even to the extent, in some cases, of making a gratuity, or a mere trifle. The practice is to be commended, but not under a rule that they may, while thus giving to one, take, because of that fact, from another."

In recent years there have been many important matters involving negotiation, adjustment, and settlement of mat-

ters, particularly those pending before the Internal Revenue Department, Interstate Commerce Commission, Federal Trade Commission, and other like bodies, state and national. Large and often exorbitant fees have been contracted for and paid in cases of this character. There seems to be a growing feeling that every lawyer is entitled to compensation based on the amount involved. Charges for professional services are affected somewhat by the very large fees paid in these special matters. Lawyers should be well compensated. Executors and administrators are entitled, particularly in contested matters, to have the benefit of skilled and experienced counsel. The tendency to place compensation for professional services upon a purely commercial basis must be viewed with apprehension. When that is done, the essential difference between a trade and a profession is lost sight of. The responsibility that rests upon the legal profession, both bench and bar, is no trivial or imaginary one. The maintenance of the traditions and ideals of the bench and bar rests with the profession. The atmosphere and practices of the market place ought not to pervade the offices of attorneys or the precincts of the courts. It is not the intent and purpose of the law requiring estates to be probated that they should for that reason be compelled to pay tribute to any one. They are properly and justly chargeable with the reasonable expense of administering the trust, and no more.

It may be argued that where there is no matter of contest and the time expended in rendition of the necessary professional service is small, the temptation to involve the estate in difficulty will be correspondingly great. That thought rests upon a very low conception of the ideals of the profession, and if there are attorneys unscrupulous enough to follow such a course of conduct they may be denied all compensation and in a proper proceeding their names may be stricken from the roll of attorneys. Some inquiry leads to the conclusion that the practice of basing

charges upon the amount involved in an estate is a growing one, and what is said here is said in relation to the practice as a whole and not with particular reference to the case at bar.

Justice requires that the judgment in this case be reversed, and the cause be remanded with directions that a new account be filed disclosing the amount of time expended in connection with the rendition of services to the executor of a professional character. No allowance should be made for time expended in performing duties which the executor himself should have performed. The reasonable and ordinary rate applicable to such services should be ascertained and applied and the amount properly allowable determined. What is said here applies also to the amount allowed to the guardian *ad litem*. In view of the character of the services rendered the amount does not seem disproportionate, but there is no way to tell what service was rendered. When executors present accounts for expenses incurred in employing counsel, the account should disclose the nature of the service rendered, the time expended, and any other element necessary to a proper determination of the amount which shall be allowed.

The courts are charged with a heavy responsibility in everything that relates to the administration of trusts. Often the circumstances are such that the court is the sole conservator of the estate of the deceased citizen, and in the administration of the trust the court should have the counsel and assistance of all attorneys, who are first and above all officers of the court. Courts should not be embarrassed by the acts of their own officers. Attorneys should present to executors and other trustees accounts for services rendered which will meet the test which the court is bound to apply.

*By the Court.*—The judgment is reversed, and the cause remanded for further proceedings as indicated in the opinion.