RYAN, Respondent, vs. DEPARTMENT OF TAXATION, Appellant.

*February 10—March 9, 1943.*

492

For the appellant there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

*R. J. Sutherland* of Madison, for the respondent.

ROSENBERRY, C. J.   The sole question involved is whether the moneys received by the plaintiff from the Federal Savings & Loan Insurance Corporation and the Federal Home Loan Bank Board were paid to him as an employee or as an independent contractor.

The following is a condensed statement of the facts in this case : The plaintiff is a practicing lawyer and a member of the firm of Schubring, Ryan & Petersen, of Madison, Wisconsin. In August, 1936, Mr. Horace Russell, general counsel for the Federal Home Loan Bank Board and for the Home Owners' Loan Corporation and the Federal Savings & Loan Insurance Corporation, two corporations under that board, was sent to Wisconsin to ascertain the best method of handling certain Wisconsin litigation. Mr. Russell interviewed a number of attorneys in Milwaukee and then came to Madison and interviewed Mr. Ryan. As a result of that interview, Mr. Ryan was employed by the federal agencies to handle the litigation. The Federal Savings & Loan Insurance Corporation adopted a resolution, the material part of which is as follows :

"Be it resolved, That William Ryan, Madison, Wisconsin, be and he is hereby employed . . . to represent the defendants in the case of the state of Wisconsin. . . . Said employment is on the basis of $833.33 per month with the understanding that said sum will be paid for at least three months. It is understood that said William Ryan will give so much of his time as may be necessary in said litigation, but it is understood that full time will not be required."

This resolution was adopted August 21, 1936, and on the next day, Mr. Russell advised Mr. Ryan to that effect, and he immediately commenced representation of the federal agencies.

What Mr. Ryan did in the course of his employment and the nature of the services rendered by him may best be stated by a condensation of the testimony of Mr. Russell, general counsel for the agencies. He said :

"All employees of the United States are required to take an oath of office which was true of this corporation, which was wholly owned by the United States. Both the Federal Home Loan Bank Board and the two corporations under its direction provided transportation to employees under standardized government travel regulations. The facilities afforded Mr. Ryan were the same as afforded other employees of the department.

. . . Home Owners' Loan Corporation did employ lawyers on an independent contractor basis. These attorneys were not required to take an oath of office and were not provided any travel or sustenance. . . .

"Mr. Ryan worked under my immediate direction and under the direction of the Federal Savings & Loan Insurance Corporation, acting through its board of trustees. In the detail of the work I conferred with him before he was employed and for a year after talked to him by telephone from time to time, gave directions as to what we were going to do in the state court case that was pending at that time and as to the institution of suit in the United States court, and as to the detail of the conduct of that litigation. He in turn submitted to me the work that he did and it was reviewed in my office. That work was carried to the board from time to time. The board discussed the progress of this case, it being one of the most important that the board was concerned with. The board gave me directions and I in turn passed them on to Mr. Ryan. The relationship was the same as the relationship between me and other employees of that staff who were employed in like manner and worked in like manner.

"After the initial conference with Mr. Ryan I drafted or caused to be drafted a proposed complaint. We sent that material to Mr. Ryan for his advice. He drafted a complaint, sent it to us, we reviewed it, and finally he sent us his final revision here and we made some changes in it and sent it directly from Washington to Mr. Wallace Reiss, local counsel for Federal Savings & Loan Insurance Corporation at Milwaukee. He secured the proper signatures and sent it on to Mr. Ryan and he filed the bill. I made suggestion as to the seeking of relief by way of declaratory judgment. I was much more concerned with the validity of the statute than I was with this one association. . . .

"As to suggestions or instructions with reference to the manner of handling of the briefs or contents thereof, I conferred with Mr. Ryan as I did with other members of the staff constantly and agreed with him as to the course the case would take. He agreed that I would devote the principal portion of my briefs to certain questions involved and he would devote a certain major portion of his brief to other questions. . . .

"The correspondence with Mr. Ryan dealt with the major problems of policy and the details of litigation, if not minor details, such as when the bill was drafted. Mr. Ryan after much negotiation had prepared his final draft and my staff and I made some changes in it in Washington before it was filed, some minor changes. As to the extensiveness of my contacts with Mr. Ryan I believe I was in his office before he was employed. I was in court with him at Superior on the preliminary hearing. I was in court with him at Madison when it was tried. I was in court with him at Chicago before the United States circuit court of appeals for the 7th circuit. He was in my office in Washington one or two times. I talked to him by telephone repeatedly. These personal contacts and telephone conversations dealt with detail of the handling of the work. I was responsible immediately to the board and kept up with all of the details. I think I performed all my duties by keeping up with it and by giving Mr. Ryan direction as to any detail that seemed to me to require any direction at all. . . .

"Before the circuit court of appeals in Chicago I made the complete argument on one constitutional ground and handled that in detail. Mr. Ryan on the other hand, handled certain other phases of the argument in detail. Mr. Ryan did not handle in his brief the matters I handled in detail in my arguments. I had conferred with him and my decision was that it was better for me to handle one phase of it and for him to handle the other completely and he handled the other as directed."

From the testimony it appears that Mr. Ryan attended to some of the details in the litigation on his own initiative and without direction, for instance, he signed a stipulation extending the time for pleading; he granted an extension of time for submission of proposed findings to the United States district judge; he drafted findings of fact for submission to the district court; he signed a stipulation for substitution of the attorney general of Wisconsin, elected during the progress of the case; and he arranged for a stipulation extending the time for filing briefs in the circuit court of appeals.

The plaintiff was paid semimonthly by check at the contract rate from August 21, 1936, until May 1, 1937, when the rate was reduced to $300 per month. He was paid that amount semimonthly until September 8, 1937, when his former compensation was restored and so continued until February 16, 1938, when it was again reduced to $300 per month. This compensation continued until August 30, 1938, when he was transferred to the legal department of the Federal Home Loan Bank Board as "Special Attorney, Grade 19, $10,000 per year." From that date until December 10, 1938, his services were continued and he was paid semimonthly at that rate. On December 10, 1938, his employment was terminated.

Mr. Ryan did the work in the office of his firm at Madison, Wisconsin, and was occasionally assisted by his associates. It should be further noted that the employment was at will and the arrangement might be terminated at any time by either party. The relation of attorney and client in its general features is that of principal and agent and is governed by the same rules which are applicable to other agencies. Mechem, Agency (2d ed.), sec. 2150; *Brown v. Hebb* (1934), 167 Md. 535, 175 Atl. 602, 97 A. L. R. 366, 373. See *Estate of Briese* (1941), 238 Wis. 516, 300 N. W. 235, also 2 Am. Jur. p. 14, sec. 4, and cases cited.

In any discussion involving the relation of principal and agent, care must be employed as to the use of terms. A considerable part of the law of agency was developed in connection with the relation of master and servant. In more recent times the words "employer and employee" have nearly supplanted the older term of "master and servant." This shift has been due no doubt to the vast increase in the employment of skilled persons in industry. The word "servant" has certain connotations which are distasteful to many persons (*Kourik v. English* (1937), 340 Mo. 367, 100 S. W. (2d) 901), so that it has come about that the terms "servant," "employee," and "agent" are often used interchangeably without regard

to their strict legal meaning. However, there are valid and useful distinctions in their legal significance. The term "master and servant" is used most frequently in connection with the discussion of the tort liability of a master or employer but the relationship of employer and employee is substantially the same as that of master and servant. *Atlantic Coast Line R. Co. v. Tredway* (1917), 120 Va. 735, 10 A. L. R. 1411. In the Restatement of the Law, the term "master and servant" is used to include the relation of employer and employee. In sec. 2 of the Restatement, Agency, the following definition is given:

"(2) A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

Under sec. 2 is the following comment:

"*b*. The word 'servant' is used in contrast with 'independent contractor,' a term which includes all persons who contract to do something for another and who are not servants with respect thereto. An agent who is not a servant is, therefore, an independent contractor when he contracts to act on account of the principal."

Sec. 223 is as follows:

"The relationship of master and servant may exist although the law requires the selection of persons for the particular work to be made from a limited class irrespective of how limited the class is, and the master is subject to liability for torts committed within the scope of employment by servants selected from such a class [pilots, stationary engineers and architects are good examples]."

In comment *a* the following is found:

"Even in the case of attorneys and physicians there may be the master and servant relationship, as where a firm of attorneys employs an attorney as a member of the office staff." [1]

Under sec. 250, comment *a,* relating to tort liability, is found the following:

"A manager of a store, an attorney employed as a subordinate in a law office, and a salesman in a store giving his full time to the employment are all within the master and servant relationship with their employers, although their primary function is the negotiation and bargaining associated with the word 'agent.'"

The criteria to be considered in determining whether a particular relationship is that of master and servant or principal and independent contractor, is set out as follows in the Restatement, sec. 220:

"*Definition.* (1) A servant is a person employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control.

"(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

---

[1] See *Gomber v. Industrial Comm.* (1935) 219 Wis. 91, 261 N. W. 409.

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

"(h) whether or not the work is a part of the regular business of the employer; and

"(i) whether or not the parties believe they are creating the relationship of master and servant."

Applying these general principles to the facts in this case we reach the conclusion that the plaintiff was an employee and not an independent contractor:

(1) He was subject at all times to the control and direction of the general counsel in the performance of his contract of his duties.

(2) While as an attorney he had as an officer of the court certain duties and obligations which derived from his professional occupation rather than from his employment, that did not materially affect the nature of his employment under the facts of this case.

(3) He was employed by contract at a monthly stipend to render such services as might be requested by his employer.

(4) The relation might be terminated at any time.

(5) The relationship disclosed by the evidence in this case does not bear the indicia of that of an independent contractor. He was not required to do a specified piece of work. He was employed to assist the general counsel at his request in the conduct of pending litigation. He in no sense of the term had charge of the litigation, the conduct of which was subject to the direction of the general counsel. He might be summarily discharged. See *Kolman v. Industrial Comm.* (1935) 219 Wis. 139, 262 N. W. 622.

On behalf of the defendant it is contended that this case is ruled by the case of *Reed v. Commissioner* (3d Cir. 1929), 34 Fed. (2d) 263, which was decided upon the authority of *Metcalf & Eddy v. Mitchell* (1926), 269 U. S. 514, 46 Sup. Ct. 172, 70 L. Ed. 384. *Metcalf & Eddy v. Mitchell,* the leading

case, does not sustain defendant's contention. The question there was whether a consulting engineer engaged by a state to perform work not permanent or continuous in character on public projects, whose duties were prescribed by his contract, who took no oath of office and was free to accept other concurrent employment, was an officer or employee. It was held he was neither but the facts in that case clearly distinguish it from this. The court said (p. 520) :

"Nor do the facts stated in the bill of exceptions establish that the plaintiffs were 'employees' within the meaning of the statute. So far as appears, they were in the position of independent contractors. The record does not reveal to what extent, if at all, their services were subject to the direction or control of the public boards or officers engaging them. In each instance the performance of their contract involved the use of judgment and discretion on their part and they were required to use their best professional skill to bring about the desired result. This permitted to them liberty of action which excludes the idea of that control or right of control by the employer which characterizes the relation of employer and employee and differentiates the employee or servant from the independent contractor."

The record in this case reveals almost the exact opposite of the factual situation disclosed in *Metcalf & Eddy v. Mitchell, supra.*

In *Reed v. Commissioner, supra,* it appears that Reed was employed to conduct litigation in regard to inheritance taxes due from two estates. In *Lucas v. Howard* (1929), 280 U. S. 526, 50 Sup. Ct. 87, 74 L. Ed. 593, Howard was employed by four Texas cities to compel the separation of railway grade crossings. It does not appear that he was subject to direction and control of anyone in the performance of his duties.

Defendant also argues that the funds which the plaintiff received as compensation for his services were turned over by him to his law firm, deposited in the account of the firm and handled in its accounts the same as other moneys received

from clients in the usual manner. Just how the disposition made by the plaintiff of his compensation after it was received by him affects the question presented for decision we are unable to see. If the money was paid to him as a result of services rendered as an employee rather than an independent contractor, that answers the question presented in this case. The tax was not assessed against plaintiff's firm but against him personally.

It is also argued that the determination of the board of tax appeals is a determination upon a question of fact and therefore not subject to review. There is no dispute as to the facts of this case. The result can only be reached by the application of rules of law to the undisputed facts. For instance, there is no doubt but that the plaintiff was subject to the direction of the general counsel. That is one of the things to be considered in applying the rules of law applicable. There is no dispute as to the fact or as to any inference to be drawn from the fact.

Stress is also laid upon the fact that the plaintiff took an oath of office. That is also considered to be without significance. He certainly was not an officer. He exercised no sovereign power of the government of the United States, and as a matter of fact it appears that all employees above a certain grade are required to take an oath. He was either an employee or an independent contractor. While in the ordinary case of attorney and client the relationship is that of principal and independent contractor, under the particular facts of this case, the trial court correctly held the plaintiff to be an employee and not an independent contractor.

*By the Court.*—Judgment affirmed.

FOWLER, J. (*dissenting*). I cannot agree to the conclusion of the court that Mr. Ryan was an employee of Mr. Russell. To my mind he was as much an independent contractor as is any attorney employed to render services as an attorney in connection with a given case. The concluding paragraph of

the court's opinion concedes that "in the ordinary case of attorney and client the relationship is that of principal and independent contractor." This to my mind concedes the decision of the case to appellant. Mr. Ryan to my mind stood in precisely the same relation to Mr. Russell that an attorney stands to his client in the ordinary case.

To make my position clear let us compare Mr. Ryan's situation to that of his attorney, Mr. Sutherland, in the instant case. Theirs is "the ordinary case of attorney and client." Mr. Sutherland's relation to Mr. Ryan is precisely the same as that of Mr. Ryan to Mr. Russell. Could not Mr. Ryan control the instant litigation precisely as Mr. Russell controlled that litigation in the case in which he retained Mr. Ryan? Could not Mr. Ryan require Mr. Sutherland to do in connection with this litigation precisely as Mr. Russell required Mr. Ryan to do in the other case? Could not Mr. Ryan discharge Mr. Sutherland at any time, as Mr. Russell might have discharged Mr. Ryan? Mr. Ryan's situation in the case in which he rendered service to the federal agency is precisely that of a lawyer "in the ordinary case of attorney and client." The client in the ordinary case may control his attorney if he wants to, precisely as Mr. Ryan could have done in this case and precisely as Mr. Russell did or could have done in the litigation in which Mr. Ryan was retained.

It is to be noted that the only instances cited in Restatement, Agency, cited in the opinion of the court holding attorneys to be "employees" as distinguished from "independent contractors" in which an attorney is held to be an employee is "where a firm of attorneys employs an attorney as a member of its office staff" and "an attorney employed as a subordinate in a law office." Mr. Ryan was not so employed. The adjudicated cases involving exemption from taxation in like situations supporting the view that Mr. Ryan was not an employee are *Howard v. Commissioner* (5th Cir.), 29 Fed. (2d) 895, and *Reed v. Commissioner* (3d Cir.), 34 Fed. (2d) 263, which

held the attorney to be an employee, both of which were reversed by the supreme court of the United States, the former in 280 U. S. 526, 50 Sup. Ct. 87, 74 L. Ed. 593, and the latter in 281 U. S. 699, 50 Sup. Ct. 352, 74 L. Ed. 1125. Both United States supreme court decisions are *per curiam,* the former only saying: "Judgment reversed upon the authority of *Metcalf & Eddy v. Mitchell,* 269 U. S. 514," and the latter only says: "Judgment reversed upon the authority of *Lucas v. Howard,* 280 U. S. 526." .The opinion of the court herein states in effect that *Metcalf & Eddy v. Mitchell, supra,* is distinguishable in its facts, and therefore the two United States supreme court decisions are erroneous. The only difference in the factual situations involved that I can perceive is that the *Mitchell Case* involved an engineer engaged by a local subdivision of a state instead of a lawyer engaged by the federal government and the one involved a federal tax on a person engaged by the state to perform a particular service for a federal agency and the others involved persons engaged in the one case by the state, and the other by a state local subdivision to perform a particular service for the state or its subdivision. Neither difference in my view so distinguishes the *Mitchell Case* from the *Reed* and *Howard Cases* as to make the principle of it inapplicable to them. Anyhow the supreme court of the United States has twice had the matter under consideration and has considered the principle of the *Mitchell Case* applicable to the *Reed* and *Howard Cases.* I think that court was right in so considering. All the cases decided subsequent to the disposition of the *Howard* and *Reed Cases* by the United States supreme court, except one, hold the relation not to be that of employee. Those holding the relation of an attorney employed by the state in connection with particular litigation to be that ordinarily existing between attorney and client are, *Norcross v. Helvering* (D. C. App.), 75 Fed. (2d) 679; *Buckner v. Commissioner* (2d Cir.), 77 Fed. (2d) 297; *Medalie v. Commissioner* (2d Cir.), 77

Fed. (2d) 300; *Haight v. Commissioner* (7th Cir.), 52 Fed. (2d) 779; *McNulty v. Commissioner* (2d Cir.), 95 Fed. (2d) 1008; *Commissioner v. Murphy* (2d Cir.), 70 Fed. (2d) 790; *Watson v. Commissioner* (3d Cir.), 81 Fed. (2d) 627; *Burke v. McGowan* (D. C.), 39 Fed. Supp. 174. The exception above referred to is *Burnet v. Livesey* (4th Cir.), 48 Fed. (2d) 159, 161. In that case the attorney was employed by a public service commission of a state, at a yearly salary, payable monthly. His services were not limited to specific litigation but included rendering of opinions, advising with the commission, and trial of all causes to which the commission was a party. He was permitted to conduct private practice, but his employment was continuous and he gave preference to the commission over private clients.

I think the judgment should be reversed for another reason. An attorney cannot claim an exemption from income taxation because of receipts for professional services rendered by him for the federal government or its departments, unless those receipts belonged to him as part of the income received by him from the practice of his profession. Under the evidence of this case the money paid by the federal government for the services of Mr. Ryan did not belong to him and was not received by him but belonged to and was received by the law firm of which he was a member. True the checks for his services ran to Mr. Ryan by name and were received by him in the mail, but he turned them directly into the bank account of the firm, and the amount thereof was disbursed by the firm as all other receipts of the firm were disbursed. The proceeds of the checks no more belonged to him than money paid to him for services rendered by him for any other client. Mr. Ryan's income from the practice of his profession was fixed by his partnership contract, and his income from such practice was the amount received by him from his firm pursuant to that contract. The situation is entirely different than it would be had Mr. Ryan been practicing alone as distinguished from practicing as a member of a law firm. A lawyer cannot exempt

from his income tax receipts from the federal government unless they were comprised in that income, and the instant receipts were not so comprised, any more than money belonging to the firm paid to him by a private individual for whom he performed professional services as compensation for such services was so comprised.

I am authorized to state that Mr. Justice FRITZ concurs in this dissent.

BARLOW, J., took no part.