ESTATE OF THRUN: SYVOCK, Appellant, v. SCHULTZ, County Judge of Dodge County, Respondent.

*May 2—June 4, 1963.*

For the appellant there were briefs by *Brennan & Brennan,* attorneys, and *Martin J. Brennan* of counsel, all of Milwaukee, and oral argument by *Martin J. Brennan.*

For the respondent there was a brief and oral argument by *Frederick R. Schwertfeger,* corporation counsel of Dodge county.

GORDON, J. The appellant contends that the administratrix was guilty of maladministration in the following respects:

1. In delegating to the attorneys who were probating the Thrun estate the duty of collecting the assets and paying out distributive shares.

2. In allowing said attorneys to issue a check payable directly to a legatee who was a minor at such time.

3. In obtaining a receipt from the guardian which failed to recite the minor's address.

4. In paying the sum of $7,160.31 instead of the sum of $7,303.40 to the minor, Richard Syvock.

5. In failing to deposit the funds received from the sale of certain assets in an interest-bearing account.

The standard which a court is to apply in determining whether to grant permission to sue upon an executor's bond is set forth in *Estate of Hewitt* (1927), 194 Wis. 15, 19, 215 N. W. 573. The petitioner must show *prima facie* grounds for relief. Secs. 321.02 and 321.04, Stats., authorize the court hearing the petition to permit such action. The court is not required to grant permission unless *prima facie* grounds for relief are advanced in the petition.

## 1. *The Attorneys as Agents.*

The petitioner urges that the administratrix erred in permitting the attorneys for the estate to pay out the distributive shares. While this is the usual function of an administratrix, there is no impropriety in having this service done through attorneys as agents.

The relationship between an attorney and his client is that of principal and agent. *Wauwatosa Realty Co. v. Bishop* (1959), 6 Wis. (2d) 230, 236, 94 N. W. (2d) 562; *Ryan v. Department of Taxation* (1943), 242 Wis. 491, 496, 8 N. W. (2d) 393; 2 Mechem, Agency (2d ed.), p. 1726, sec. 2150. The breadth of an attorney's agency is reflected in *Illinois Steel Co. v. Warras* (1909), 141 Wis. 119, 122, 123 N. W. 656.

It would be inappropriate for the attorneys to perform nonlegal services which would ordinarily be done by the administratrix if this were a technique to enlarge the fees charged to the estate. *Estate of Braasch* (1957), 274 Wis. 569, 572, 80 N. W. (2d) 759; *Will of Willing* (1926), 190 Wis. 406, 414, 209 N. W. 602. However, there is no claim in the instant case that Mrs. Hiller's use of her at-

torneys brought about an increased charge against the estate.

In the absence of a showing that excessive fees were occasioned thereby, we are unable to discern any irregularity in the administratrix's having her attorneys make the disbursement of distributive shares. Indeed, the legal ramifications surrounding the payment of funds to a minor under guardianship would justify Mrs. Hiller's decision to have her attorneys perform the function.

In any event, her turning this matter over to the attorneys does not make out a *prima facie* case of maladministration. The petition fails to allege that any harm was suffered by the minor as a result of the fact that the payment was made by the attorneys rather than by Mrs. Hiller.

## 2. *The Minor as Payee.*

The petitioner claims that by issuing a check payable directly to Richard Syvock the administratrix was guilty of maladministration. It is argued that if the check had been made payable to the petitioner's father, Sam Syvock, as guardian, the check could not have been cashed without the production of current letters of guardianship. The argument is further advanced that anybody cashing a check made payable to a guardian might demand proof that an adequate bond was outstanding.

A person cashing a check for a guardian on behalf of a minor is under no obligation to make inquiry as to the sufficiency of the guardian's bond. It is possible that one cashing such a check would inquire as to the size of the guardian's bond, but we are not mindful of any requirement or commercial practice necessitating such investigation.

It is entirely consistent with the facts disclosed in the petition that the guardian may not have negotiated the check by cashing it but, instead, may have deposited it in a guardianship account. This could have been done whether the

check had been made payable to the ward or to the guardian, and the size of the guardian's bond would not have been brought into inquiry.

No authority is cited for the petitioner's contention that the issuance of the check payable directly to the minor constituted negligence or maladministration on the part of the administratrix. We conclude that the trial court was not obliged to permit a suit upon Mrs. Hiller's bond based upon this alleged irregularity.

### 3. *Adequacy of the Receipt.*

The receipt given by Sam Syvock is in evidence. Although the signature of Sam Syvock does not identify his capacity, the balance of the instrument unequivocally shows that he gave the receipt as guardian of Richard Syvock.

It is argued further that the receipt should have stated the address of the minor. The petitioner's contention is that if his address had been disclosed on the receipt, the county court of Dodge county, upon receiving such receipt, would have known that the minor lived in Milwaukee county and, pursuant to sec. 318.07, Stats., would have transmitted a certified copy to the county court of Milwaukee. Petitioner maintains that this would have provoked the latter court to augment the guardian's bond, which would, in turn, have shielded the ward against the loss which occurred.

This matter was discussed in *Estate of Hewitt* (1927), 194 Wis. 15, 19, 215 N. W. 573, where this court said:

"Clearly, the executor is not required to ascertain at his peril that the guardian is solvent. This is a matter for the county court that appoints the guardian. It must in the first instance require a bond, which it may increase from time to time. It is the duty of the court to require annual reports of the guardian's trust. The statute requires the executor to take receipts from the guardian and file duplicates with the county court having charge of the estate. The statutes also require that the county court wherein such

receipts are filed shall transmit a copy thereof to the county court appointing the guardian. The reason is apparent. It is to advise the county court appointing the guardian of any sums paid to him in trust in a proceeding in another jurisdiction, so that the court appointing the guardian may increase the bond of the guardian or take such other steps as may be necessary to protect the ward."

It will be noted that neither sec. 318.07, Stats., nor the language of the court in the *Hewitt Case* imposes the onus of transmission upon the administratrix. Indeed, the statute specifically puts this burden upon the county court; the discussion in the *Hewitt Case* also contemplates that the copy of the receipt shall be sent by the court. It would be an unwarranted extension of the statute beyond its plain meaning for this court to adopt the petitioner's view that the administratrix had a legal duty to send a copy of the receipt to the Milwaukee county court.

The absence of the minor's address upon the receipt cannot be denominated maladministration; there simply is no requirement that such address be given. In addition, the petition for letters of administration lists the address of the minor, and thus the information was readily available to the county court of Dodge county.

We appreciate that the minor's loss stems from the failure to notify the Milwaukee county court (which had appointed the guardian) and the latter court's failure to increase the bond. Notwithstanding the language of the statute, the filing of a receipt with one county court does not automatically trigger the transmission of a copy of the receipt to the other county court. The statute is not self-executing, and the mechanics for execution are not spelled out.

It would seem that the statute could be improved so as to provide that a specific individual be directed to take affirmative steps to notify the court which had appointed the guardian. This is a matter which we shall invite to the at-

tention of the judicial council. However, we are persuaded that there was no duty on the part of the administratrix to perform the function of notifying the Milwaukee county court and that her failure to do so and to assert the minor's address were not acts of maladministration.

### 4. *The Amount of the Distribution to the Ward.*

The petitioner claims that there was a discrepancy between the amount actually paid to the guardian ($7,160.31) and the amount receipted for by him ($7,303.40). An examination of the record discloses that the total amount distributed to the three heirs of the Thrun estate was $21,910.21. The inheritance tax on Richard's share of $7,303.40 was $137.86. This leaves a net difference of $5.23, which we deem *de minimus* under the circumstances.

### 5. *The Deposit at Interest.*

The final contention of the petitioner is that Mrs. Hiller is guilty of maladministration because she failed to deposit the funds received from the sale of the assets of the estate in an account which bore interest. The petition for probate was filed in May, 1950. One parcel of real estate was sold in January, 1951. In April, 1951, another piece of real estate was sold. Final judgment was entered in July, 1951.

The trial judge observed that the estate was settled expeditiously. The administratrix sold the two parcels of real estate promptly and at prices greater than the appraised valuations. The estate was closed fourteen months after the original petition for probate. We agree with the learned trial judge, who concluded: " . . . it is not *prima facie* maladministration when a personal representative fails to produce income from the funds in his hands in the above fact situation."

*By the Court.*—Order affirmed.

DIETERICH, J. (*dissenting*). I must respectfully dissent from the majority opinion. A minor has no standing before the law. He must be represented by a guardian if his interests, privileges, and rights are to be made secure. The statutes are designed to protect minors and should be construed toward that end. The result in this case leaves the minor defenseless against the defalcations of his guardian when the guardian's bond is insufficient to cover those defalcations. Public policy demands a better answer.

The executor or administrator of an estate serves in a fiduciary capacity. With the common-law concepts of a fiduciary in mind it would not put an unreasonable strain upon the statutes to hold that they require such fiduciary to ascertain whether a guardian's bond is sufficient before transferring a minor's property to that guardian. Any other result, it seems to me, is unconscionable and gives insufficient weight to the declared public policy of requiring property protection for minors and incompetents.