HEIMS and wife, Respondents, v. HANKE, Appellant.

*November 3—December 2, 1958.*

For the appellant there was a brief and oral argument by *Louis C. Ritter* of Milwaukee.

For the respondents there was a brief by *Rubin, Ruppa & Wegner* of Milwaukee, and oral argument by *Nathan Ruppa*.

WINGERT, J. Appellant contends that there was no evidence of actionable negligence on his part, that William's negligence, if any, could not properly be imputed to defendant, that no nuisance was established, that plaintiff's negligence was the sole cause of the accident, and that the trial court erred in excluding certain evidence.

1. *Defendant's negligence.* The finding that the icy condition of the sidewalk was caused by the negligence of the defendant is supported by sufficient evidence.

The court could properly find that William, the nephew, was negligent in spilling water on the sidewalk in freezing weather and doing nothing to prevent the formation of ice or to remove or sand it, or to warn pedestrians of it. While the day was not too cold for washing a car barehanded, the car was in the bright sunlight while the sidewalk where the water was spilled was then or soon would be in the shade of the house. The court could well infer that one in the exercise

of ordinary care would have foreseen the formation of a slippery condition and would have done something to protect users of the sidewalk.

It was also permissible to conclude from the evidence that defendant was liable for injuries resulting from William's negligence, on the principle *respondeat superior*. Probably William was defendant's servant in carrying the water. A servant is one employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control. Restatement, 1 Agency (2d), p. 485, sec. 220. The evidence permits the inference that William was in that category, although he was an unpaid volunteer. One volunteering service without any agreement for or expectation of reward may be a servant of the one accepting such services. Restatement, 1 Agency (2d), p. 497, sec. 225. The illustration given in comment *a* under that section is pertinent:

"A, a social guest at P's house, not skilled in repairing, volunteers to assist P in the repair of P's house. During the execution of such repair, A negligently drops a board upon a person passing upon the street. A may be found to be a servant of P."

If William was not the employee or servant of the defendant in the strict sense, he was certainly defendant's agent in fetching water from the faucet, although he received no compensation. Restatement, 1 Agency (2d), pp. 7, 85, secs. 1 (1) and 16; *Krzysko v. Gaudynski,* 207 Wis. 608, 615, 242 N. W. 186. A principal is subject to liability for physical harm to the person of another caused by the negligence of an agent who is not a servant, where the principal is under a duty to have care used to protect others and he confides the performance of the duty to the agent. Restatement, 1 Agency (2d), pp. 551, 463, secs. 251 (a) and 214; *Schmidt v. Leary,* 213 Wis. 587, 590, 252 N. W. 151.

When defendant sent his agent to carry water across the sidewalk in freezing weather, he was under a duty to have care used to protect users of the sidewalk from ice, and since he confided the performance of that duty to William, he was responsible for William's negligence in the premises.

Defendant relies on *Walley v. Patake,* 271 Wis. 530, 74 N. W. (2d) 130, for the proposition that owners of property abutting a city street are not responsible for injuries resulting from failure to remove accumulations of snow and ice from the sidewalk. The proposition and the case cited relate only to natural accumulations of snow and ice. One who negligently creates an artificial accumulation of ice on a public sidewalk may be liable to one injured thereby. *Johnson v. Prange-Geussenhainer Co.* 240 Wis. 363, 368, 373, 2 N. W. (2d) 723; *Walley v. Patake,* 271 Wis. 530, 536, 74 N. W. (2d) 130.

Since the finding of negligence attributable to defendant is sustainable, there is no need to consider whether the condition constituted a nuisance.

2. *Apportionment of negligence.* The court's apportionment of the total negligence, 90 per cent to defendant and only 10 per cent to plaintiff, has given us serious concern. In mitigation of defendant's negligence, it is pointed out that the weather was not very cold although found to be below freezing, and that defendant and William washed the car with bare hands. On the other hand, it is urged that plaintiff was seriously careless in looking out for her own safety, since by her testimony she was looking straight ahead as she walked along the sidewalk, and did not see the patch of ice at all, although she described it as about three feet by five feet in dimensions, and it was broad daylight at the time. A few minutes later another witness, walking in the opposite direction, saw the icy spot and detoured on the grass to avoid it. Tending to justify plaintiff's inattention to the condition of the sidewalk is the fact that aside from this patch of ice

the streets and sidewalks were free from ice and snow; and her failure to see the particular icy spot may be partially explained by the probability that it was in a shady area to which plaintiff had come from walking in the bright sunlight.

In evaluating the respective items of negligence, it is worthy of consideration that defendant was guilty of affirmative conduct creating a condition dangerous to passers-by rightfully using the sidewalk, while plaintiff had no reason to expect ice, the streets and sidewalks being otherwise clear of it. In a somewhat comparable case, where defendant left a mailbag on the sidewalk in daylight and plaintiff failed to watch the sidewalk and fell over the bag, we sustained a jury's finding that defendant's negligence was 85 per cent of the total. *Paulson v. Madison Newspapers,* 274 Wis. 355, 360, 80 N. W. (2d) 421. A pedestrian properly using a sidewalk without reason to believe it defective is not bound to scrutinize its surface constantly for defects. *Hales v. Wauwatosa,* 275 Wis. 445, 451, 82 N. W. (2d) 301.

Weighing these various considerations, we are unable to say that the apportionment of negligence made by the trial court is contrary to the great weight and clear preponderance of the evidence. Therefore we do not disturb it.

3. *Exclusion of evidence.* After testimony by plaintiff that her doctor had not set the broken wrist properly, and a statement by counsel that an action had been brought against the doctor for malpractice, defendant's attorney asked the doctor, on cross-examination, whether plaintiff had made any claim against him for malpractice, and whether he or someone on his behalf had paid any amount to plaintiff by virtue of the injury. Objection to each question as immaterial was sustained by the court. Appellant contends that this was error, since a payment made to settle a malpractice action might constitute part payment of plaintiff's damages

resulting from the defendant's negligence, and thus require a reduction in the judgment against defendant.

It is true that where personal injuries resulting from a tort are aggravated by a doctor's malpractice, and it is impossible to separate the damages resulting from each wrong, both the original tort-feasor and the doctor may be liable for the entire damage, in which case a payment made to plaintiff by one of them will inure to the benefit of the other and require a corresponding reduction in any judgment recovered by plaintiff from the nonpaying tort-feasor. *Bolick v. Gallagher,* 268 Wis. 421, 427, 67 N. W. (2d) 860.

The present may be such a case. Defendant had a right to find out, and the information whether anything had been paid to plaintiff on account of a malpractice claim might have been material on the amount of the judgment to be entered against defendant if the negligence issues should go against him, as they did.

Nevertheless we are unwilling to reverse for error in sustaining objections to the questions. Defendant's attorney did not explain to the court how the information sought was material, beyond the inadequate statement that "I was thinking to determine the amount of damages sustained by the plaintiff." The materiality of the inquiry under the principles discussed in *Bolick v. Gallagher, supra,* and outlined above was not obvious nor commonplace; and the learned trial judge, for all his long experience, could not fairly have been expected to carry the controlling principles in mind without the assistance of counsel. Where a line of inquiry is sought to be justified on a theory no more readily apparent than that here relied upon, counsel owes it to the court to point out the proper reason for it, and on his failure to do so rejection of the evidence will not ordinarily be considered to warrant reversal.

*By the Court.*—Judgment affirmed.

BROWN, J., took no part.