ARSAND, Surviving Spouse and Personal Representative of the Estate of Marvin D. Arsand, Plaintiff-Respondent, v. CITY OF FRANKLIN, Defendant-Appellant.

*No. 75–593. Argued January 5, 1978.—Decided April 5, 1978.*
(Also reported in 264 N. W. 2d 579.)

For the appellant there was a brief by *James P. O'Neill, Douglas J. Carroll* and *Arnold, Murray & O'Neill* of Milwaukee, and oral argument by *Mr. Carroll*.

For the respondent there was a brief by *J. Michael End, Thomas L. Frenn* and *Gray & Barden, S. C.* of Milwaukee, and oral argument by *Mr. End*.

ABRAHAMSON, J. The City of Franklin (City) appeals from a $25,697.85 judgment entered against the City and in favor of Lois M. Arsand, surviving spouse of Marvin D. Arsand and personal representative of his estate (hereinafter referred to as the Estate). The judgment was entered upon a jury's special verdict finding that John Karsten, the pilot whose negligent physical con-

duct caused the crash in which Arsand was killed, had been acting as the City's "agent" at the time of the crash. Under the instructions given the jury, a finding of "agency" is not sufficient to establish the City's vicarious liability for Karsten's tortious conduct. Accordingly, we reverse and remand the cause for a new trial.

## I.

Marvin Arsand was killed on July 4, 1972, in an airplane accident. The parties stipulated that the accident had been caused by the negligence of John Karsten, a licensed pilot flying his own plane. Karsten's flight was a scheduled part of a fourth of July celebration which had been planned by an organization known as the City of Franklin Fourth of July Commission (hereinafter referred to as the Commission). Karsten had agreed to participate in the celebration by dropping poppies from his plane, and Arsand, Karsten's cousin, had agreed to accompany Karsten to help drop the poppies.

The Estate premised this suit against the City on the theory that Karsten was acting as the City's agent at the time of the accident in which Arsand was killed. In support of that theory, the Estate sought to show a principal-agent relationship between the City and the Commission and between the Commission and Karsten. The City, on the other hand, sought to establish that the Commission was a private, voluntary organization of city residents, unconnected with the city government, and that Karsten was merely a volunteer who had no connection with the Commission.

The jury was given Wisconsin Civil Jury Instruction No. 4000, which provides:[1]

---

[1] The comment to Wis. Jury Instruction (Civil) No. 4000 refers to Restatement (Second) of *Agency*, sec. 1 (1958).

Sec. 1 of the Restatement states:

"§1. Agency; Principal; Agent

"Question No. [1] inquires whether at the time of the accident in question, [the pilot, John Karsten,] was acting as an agent of [the City of Franklin.]

"*Agency* is defined in the law as the fiduciary relationship which results from the manifestation of the consent by one person to another that the second person shall act on the first person's behalf and subject to his control, and consent by the second person so to act.

"The one for whom action is to be taken is the principal. The one who is to act is the agent.

"An agency is created as the result of the conduct of two parties. The conduct on the part of the principal must show that he is willing that the agent act for him and must indicate that the agent is to do so, subject to the principal's control. The conduct on the part of the agent must show that he acts or agrees to act on the principal's behalf, subject to his control.

"An agency, therefore, is based on an agreement between the parties which embodies three factual elements:

"(1) the manifestation of the principal that the agent is to act for him;

"(2) the agent's acceptance of the undertaking;

"(3) the understanding of the parties that the principal is to control the undertaking.

"A principal-agent relationship may be created or exist between the parties as a result of their acts and conduct, with or without their knowledge or intent that the relationship was, or is being, created.

"You will carefully weigh and consider all the credible evidence and reasonable inferences from the evidence bearing on this inquiry, and, if you are satisfied that the elements necessary to establish the agency relation between the parties have been proven, you will answer the question 'Yes'; otherwise you will answer it 'No.' "

Based upon the apparent assumption of the parties and the trial court that liability necessarily followed from a

---

"(1) Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

"(2) The one for whom action is to be taken is the principal.

"(3) The one who is to act is the agent."

finding of agency as defined in the instruction quoted above,[2] the following special verdict question was submitted to the jury:

"QUESTION NO. 1 At the time of the accident in question, was the pilot, John Karsten, acting as an agent for the City of Franklin?"

The jury answered "yes" to the special verdict question, and the trial court, after denying the City's motions for judgment notwithstanding the verdict or, in the alternative, for a new trial, ordered entry of judgment against the City. This appeal followed.

## II.

Under the doctrine of *respondeat superior*,[3] a master can be held liable for the physical harm caused to third persons by the torts of his servant. *Heims v. Hanke*, 5 Wis.2d 465, 468, 93 N.W.2d 455 (1958). In *Heims v. Hanke, supra,* we adopted the definition given "servant" by the Restatement (Second) *Agency*, section 220: "A servant is one employed to perform service for another in his affairs and who, with respect to his *physical con-*

[2] The Order for Judgment states, in pertinent part:

". . . [T]he parties having stipulated in writing concerning the amount of damages and concerning the negligence of John Karsten, and *the only remaining issue, concerning whether or not John Karsten was acting as agent for the City of Franklin,* having been submitted to the jury on a special verdict . . ." (Emphasis added.)

[3] "Let the master answer." For a discussion of agency law, see generally Ferson, *Principles of Agency* secs. 17–32 (1954); Mechem, *Outlines of the Law of Agency* 4–5 (4th ed. 1952), 2 Harper & James, The Law of Torts, Ch. 26 (1956); Note, *Risk Administration in the Marketplace: A Reappraisal of the Independent Contractor Rule,* 40 U. Chi. L. Rev. 661 (1973); Estes, *Cinderella's Slipper: Agency,* 10 John Marshall J. Prac. & Proc. 225, 266 (1977).

*duct* in the performance of the service, is subject to the other's control or right to control." 5 Wis.2d at 468 [emphasis added].

In the case at bar, the Estate sought to hold the City vicariously liable for the physical negligence of Karsten. Accordingly, it was necessary for the Estate to establish that Karsten was the City's servant, *i.e.,* that the City controlled or had the right to control Karsten's physical conduct.

Wisconsin Civil Jury Instruction No. 4030 adopts the definition given "servant" by *Heims v. Hanke, supra.* Comment, Wis. J. I.—Civil No. 4030.[4] The instruction provides:

---

[4] The comment to Wis. Jury Instruction (Civil) No. 4030, states, in part:

"This instruction covers the common law definition of a servant under a master-servant relationship . . . . There are certain matters of fact which may be considered in arriving at a determination of whether a person is acting as a servant of another. These may be found by reference to Restatement 2d, 1 Agency §220 (1958). They are not included in this general definition of a servant; if the facts warrant, the general instruction may be tailored to include some or all of the material matters of fact involved."

Sec. 2(2) of the Restatement states:

"(2) A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master."

Sec. 220 of the Restatement states:

§ 220. Definition of Servant

"(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

"(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"Question ——— inquires whether, at the times material hereto, ——— was a servant of ———.

"A *servant* is one employed to perform service for another in his affairs and who, *with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control.*

"In arriving at your decision as to what your answers to this question should be, you may consider the nature of the transaction, the methods pursued, the general understanding of the parties in their dealings with each other which tend to reveal the nature of their relationship, and any and all other surrounding circumstances, including the conduct of the parties, which tend to characterize the relationship.

"You will carefully consider the credible evidence and reasonable inferences from the evidence bearing on this inquiry, and, if you are satisfied that ——— was, at all times material hereto, acting in the capacity of a servant of ———, as that term is here defined, you will answer the question 'Yes'; otherwise you will answer it 'No.' " [Emphasis added.]

Both parties to this action apparently believed that the City's liability followed automatically from a jury finding that Karsten was acting as the City's "agent," for neither party requested Instruction No. 4030, which probes the question of physical control, the prerequisite to the doctrine of *respondeat superior.*

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

"(h) whether or not the work is a part of the regular business of the employer;

"(i) whether or not the parties believe they are creating the relation of master and servant; and

"(j) whether the principal is or is not in business."

Instruction No. 4000, which was submitted to the jury, asked only whether Karsten was the City's agent. Since the doctrine of *respondeat superior* is called into play only if one who is found to be an agent can be further identified as a particular kind of agent—a servant—the jury was not asked to make the determination crucial to the City's liability. An agent may or may not be a servant;[5] and if he is not a servant, his principal is not vicariously liable for his negligent physical conduct except under certain circumstances.[6]

As we pointed out in *Meyers v. Matthews*, 270 Wis. 453, 71 N.W.2d 368 (1955), an agent is

". . . a person authorized by another to act on his account and under his control. Included within its meaning are both those who, whether or not servants . . . act in business dealings and those who, being servants, perform manual labor. An agent may be one who, to distinguish him from a servant in determining the liability of the principal, is called an independent contractor. Thus, the attorney at law, the broker, the factor, the auctioneer, and other similar persons employed either for a single transaction or for a series of transactions are

[5] Sec. 2(1) of the Restatement states:

"§ 2 Master; Servant; Independent Contractor

"(1) A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service . . . .

"Comment:

"*a. Servants and non-servant agents.* A master is a species of principal, and a servant is a species of agent. The words "master" and "servant" are herein used to indicate the relation from which arises both the liability of an employer for the physical harm caused to third persons by the tort of an employee . . . . and the special duties and immunities of an employer to the employee . . . .

"Statements made in the Restatement of this Subject as applicable to principals or agents are, unless otherwise stated, applicable to masters and servants."

[6] See note 8 *infra* and text at note 8.

agents, *although, as to their physical activities, they are independent contractors . .*" 270 Wis. at 467 [emphasis in original].

It is clear under *Meyers* that the issue at trial should not have been whether Karsten was or was not an "agent." Because the Estate sought to hold the City liable for Karsten's negligent physical conduct, it was not sufficient that the Estate allege and prove, in the words of the instruction submitted to the jury, "the manifestation of the City that Karsten was to act for it; Karsten's acceptance of the undertaking; and the understanding of the parties that the City was to control the undertaking." Rather, it was necessary for the Estate to allege and prove that in addition to the foregoing elements, the City controlled or had the right to control Karsten's physical conduct in the performance of his services. Thus, in the terminology adopted by *Meyers,* the question submitted to the jury should have been whether Karsten was a "servant" or an "independent contractor."

The basic invalidity of the theory of liability upon which the case was in fact presented to the jury is explained by our statement in *Meyers* that "[a]n agent may be one who, to distinguish him from a servant in determining the liability of the principal, is called an "independent contractor." 270 Wis. at 467. This point is similarly noted in the comments to section 2 of the Restatement (Second), *Agency:*

"The word 'servant' is thus used to distinguish a group of persons for whose physical conduct the master is responsible to third persons. It is convenient to distinguish this group of persons from other persons for whose physical conduct the employer is not responsible. These latter persons fall into two groups: those who are agents but do not respond to the tests for servants, and those who are not agents. For the purpose of *determining*

*whether or not the employer is responsible for their physical conduct, however, it is immaterial whether such persons are agents or are not agents.* For this reason the term 'independent contractor' is used to indicate all persons for whose conduct, aside from their use of words, the employer is not responsible except in the performance of nondelegable duties." [Emphasis added.]

Under the formulation of the *Meyers* decision, the Restatement, and the Wisconsin jury instructions, a servant is necessarily an agent, but an agent is not invariably a servant. Therefore, a mere finding of agency should not have been deemed sufficient to establish the City's liability. We remand with instructions that the jury be asked to determine whether Karsten was a servant, that is, the type of agent whose physical conduct was controlled or subject to a right to control by the City.

### III.

The City's principal contention on appeal is that the trial court erred in failing to find as a matter of law that with respect to the City, John Karsten was an independent contractor. In support of that contention, the City argues that there was no evidence from which a jury could have inferred that the City controlled or had the right to control the physical conduct of either Karsten or the Fourth of July Commission. As the Estate correctly notes, this argument was not raised at trial.

Wisconsin Civil Jury Instruction No. 4060 defines an "independent contractor."[7] The instruction states, in pertinent part:

---

[7] The comment to Wis. Jury Instruction (Civil) No. 4060 states: "The language of the Restatement 2d, 1 Agency §2(3) (1958) was employed in this instruction in preference to the language in the cases preceding the Restatement."

Sec. 2(3) of the Restatement states:

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by

Question ——— inquires whether, at the times materi-
al hereto, ——— was an independent contractor.

"An *independent contractor* is a person who contracts
with another to do something for him, but who is not
controlled by the other, nor subject to the other's right
to control, with respect to his physical conduct in the
performance of the undertaking.

"In arriving at your decision as to what your answer
to this question should be, you may consider the contract
between the parties; (*the course of conduct of the par-
ties, if the terms of the contract are in doubt as to con-
trol;*) the nature of the business or occupation of the
parties; the party furnishing the instrumentalities or the
tools for the work; the place of the work; the time of
employment; the method of payment; the right to sum-
marily discharge employees; the intent of the parties
to the contract, so far as it is ascertainable; and any and
all of the surrounding circumstances that tend to char-
acterize the relationship."

In its statement of the issue, the City seems to assert
that its contention that Karsten was an independent con-
tractor was presented and preserved below by the City's
motions for directed verdict, for judgment notwithstand-
ing the verdict, and for a new trial. This assertion is not
correct.

■

The City may be under the impression that the ques-
tion whether Karsten was an independent contractor was
in effect before the trial court because a finding that
Karsten was an agent necessarily constituted a finding
that he was *not* an independent contractor. It is not the
case, however, that "agents" and "independent contrac-
tors," as these terms are used in the Wisconsin Civil
Jury Instructions, fall into mutually exclusive categories.
*Meyers v. Matthews*, 270 Wis. 453, 467, 71 N.W.2d 368

---

the other nor subject to the other's right to control with respect
to his physical conduct in the performance of the undertaking. He
may or may not be an agent."

See also sec. 220 of the Restatement set forth in note 4, *supra.*

(1955). As the Restatement points out, the term independent contractor

". . . includes all persons who contract to do something for another but who are not servants in doing the work undertaken. An agent who is not a servant is, therefore, an independent contractor when he contracts to act on account of the principal. Thus, a broker who contracts to sell goods for his principal is an independent contractor as distinguished from a servant. Although under some circumstances, the principal is bound by the broker's unauthorized contracts and representations, the principal is not liable to third persons for tangible harm resulting from his unauthorized physical conduct within the scope of the employment, as the principal would be for similar conduct by a servant; nor does the principal have the duties or immunities of a master towards the broker. Although an agent who contracts to act and who is not a servant is therefore an independent contractor, not all independent contractors are agents. Thus, one who contracts for a stipulated price to build a house for another and who reserves no direction over the conduct of the work is an independent contractor; but he is not an agent, since he is not a fiduciary, has no power to make the one employing him a party to a transaction, and is subject to no control over his conduct.

"The word 'servant' is thus used to distinguish a group of persons for whose physical conduct the master is responsible to third persons. It is convenient to distinguish this group of persons from other persons for whose physical conduct the employer is not responsible. These latter persons fall into two groups: those who are agents but do not respond to the tests for servants, and those who are not agents. For the purpose of determining whether or not the employer is responsible for their physical conduct, however, it is immaterial whether such persons are agents or are not agents. For this reason the term 'independent contractor' is used to indicate all persons for whose conduct, aside from their use of words, the employer is not responsible except in the performance of nondelegable duties." Restatement (Second) of *Agency* sec. 2 (b), Comment (1957).

Only a finding that Karsten was a servant would necessarily have constituted a finding that he was not an independent contractor. Again, as the Restatement notes,

". . . [a]s the term is here used, independent contractor is the antithesis of servant. It is a technical phrase, used to include all who have agreed with another to act on his account and who are not servants. . . . The whole purpose of employing the term is to negate the special consequences of the master-servant relation . . . ." Restatement (Second) of *Agency*, TITLE B. TORTS OF SERVANTS, Introductory Note at p. 480 (1957).

Thus, had the question presented to the jury been whether Karsten was acting as the City's servant, the City's present contention that Karsten was as a matter of law an independent contractor could be considered to have been presented and preserved below. Because the "servant" and "independent contractor" are mutually exclusive classifications, the argument that Karsten was an independent contractor as a matter of law is merely another way of stating the argument that there was insufficient evidence to warrant submitting to the jury the question whether Karsten was acting as the City's servant.

The City also argues on appeal: (1) that if Karsten was an agent, he was a non-servant agent for whose physical conduct the City cannot be held liable; and (2) that the City either owed no duties to the decedent or owed only duties which were properly delegated to Karsten.

The first of these arguments adds nothing to the substance of the City's contention that Karsten was an independent contractor. It is, in fact, merely another attempt to establish that because the City neither controlled nor had the right to control Karsten's physical conduct, Karsten was not the City's servant. If Karsten

was not a servant, it is irrelevant whether or not he was an agent. As has been noted, we have used the term "independent contractor" to indicate all persons, both agents and non-agents, for whose physical conduct the employer is not responsible except in limited circumstances. *Meyers v. Matthews, supra.*

The second of these arguments seeks to negate the existence of duty to the decedent or, in the alternative, to foreclose the potential contention that because the City owed a non-delegable duty to the decedent, it was liable for Karsten's negligence even if Karsten was not a servant.[8] The question of duty was nowhere raised below. Indeed, since negating a nondelegable duty argument would aid the City only if it could be further established that Karsten was an independent contractor, (*i.e.*, not the City's servant), the City's attempt to establish that any duty owed was delegable inherently invokes the distinction between servant and non-servant which we have discussed previously.

## IV.

The Estate takes the position that the City should be precluded from arguing on appeal that Karsten was not a servant and was thus an independent contractor since it failed to make these arguments in its pleadings, in its proposed instructions to the jury, in its request for a special verdict, and in its motions after verdict for judg-

---

[8] The City thus seeks to foreclose application of the "nondelegable duty" exception to the general rule that the doctrine of *respondeat superior* does not apply to the relationship of principal and independent contractor. The nondelegable duty exception is based upon the theory that certain responsibilities of a principal are so important that the principal should not be permitted to bargain away the risks of performance. Note, *Risk Administration in the Marketplace: A Reappraisal of the Independent Contractor Rule*, 40 U. Chi. L. Rev. 661, 666 (1973).

ment notwithstanding the verdict or, in the alternative, for a new trial. The Estate argues that the sole issue presented on appeal is whether there is any credible evidence which fairly admits of an inference that supports the jury's verdict that Karsten was acting as the City's "agent" at the time of the accident in which Arsand was killed.

We agree that the City failed to distinguish between agent, servant and independent contractor at the trial. As we noted before, the trial appears to have been premised on the theory that if Karsten was the City's agent the City is liable. As a general practice, this court will not consider issues raised for the first time on appeal.[9] *Terpstra v. Soiltest, Inc.,* 63 Wis.2d 585, 593, 218 N.W. 2d 129 (1974) ; *Allen v. Allen,* 78 Wis.2d 263, 270, 254 N.W.2d 244 (1977). In *Cappon v. O'Day,* 165 Wis. 486, 490, 162 N.W. 655 (1917), we pointed out:

"The reason for the rule is plain. If the question had been raised below, the situation might have been met by the opposite party by way of amendment or of additional proof."

We have reserved the power, however, in the exercise of our discretion and in the proper case, to consider issues raised for the first time on appeal. The question is

[9] "These issues cannot be raised as a matter of right as there was no timely objection either to the form of the verdict or to the insufficiency of the instruction and no additional instruction was requested of the court. An objection to the form of a verdict must be made promptly. If counsel knows the form of the verdict prior to the verdict's submission to the jury, he should then object; if no such opportunity is afforded counsel, objection to the form of the verdict should be made before the jury returns its verdict. A party cannot take his chance with the jury and object only if he loses." *Savina v. Wisconsin Gas Co.,* 36 Wis.2d 694, 701, 154 N.W. 2d 237 (1967).

one of judicial administration and policy, and not one of power. *Terpstra v. Soiltest, Inc., supra,* at 593; *Allen v. Allen, supra,* at 270; *State ex rel. General Motors Corp. v. Oak Creek,* 49 Wis.2d 299, 319–20, 182 N.W.2d 481 (1971); *Northern States P. Co. v. Hunter Bd. of Supv.,* 57 Wis.2d 118, 132–33, 203 N.W.2d 878 (1973).

This is a proper case in which to assert our reserved power to consider the issue raised for the first time on appeal, not only for the sake of the litigants now before the court but also for future litigants.

Our prior opinions reveal a confusion too often seen in the field of agency, a confusion which has caused error here and which should be avoided in the future. Our opinions in cases involving the law of agency have not used the terms "agent," "independent contractor" and "servant" in a consistent fashion. Although our prior cases and the Wisconsin Civil Jury Instructions cite the Restatement and incorporate the concepts and standards set forth in the Restatement, we have, in tort cases involving vicarious liability, used the term "agent" where, according to the usage required by *Meyers v. Matthews, supra,* we should have employed the term "servant." In several cases involving the liability of the defendant for the negligent conduct of another, we have stated that liability depends on whether the actor was an "independent contractor" or "agent." We should have said liability depends on whether the actor was an "independent contractor" or "servant." The opinions accurately set forth the characteristics distinguishing the independent contractor and servant, but mistakenly refer to the "servant" as an "agent."[10]

---

[10] See *e.g., Lofy v. Jt. School Dt. No. 2,* 42 Wis.2d 253, 263, 166 N.W.2d 809 (1969); *Jahns v. Milw. Mutual Ins. Co.,* 37 Wis.2d 524, 528, 155 N.W.2d 674 (1968); *Mueller v. Luther,* 31 Wis.2d 220, 142 N.W.2d 848 (1966); *Bond v. Harrel,* 13 Wis.2d 369, 374, 108 N.W.2d 552 (1961).

In this case the failure to distinguish between agent and servant is not the mere use of loose and non-uniform terminology; the failure to distinguish between agent and servant has resulted in error. A finding of "agency" as defined in the Instruction given is not a sufficient basis upon which to predicate a principal's vicarious liability in tort. Accordingly, in the case at bar we do not limit our review to the question of whether there was sufficient credibile evidence to support the jury's verdict, because that verdict was based upon a theory of liability that has no support in the law.

Had the parties below been aware that Karsten's status as a "servant" or as an "independent contractor" was crucial to the determination of liability, they might have presented additional or different evidence. We conclude that we cannot determine from the record, as a matter of law, whether or not Karsten was a servant. The judgment rendered below should be reversed and the cause remanded for a new trial.

*By the Court.*—Judgment reversed and cause remanded for a new trial consistent with this opinion.

See, however, *Heims v. Hanke,* 5 Wis.2d 465, 93 N.W.2d 455 (1958), in which the court differentiated between a servant agent and nonservant agent, and *Harris v. Richland Motors,* 7 Wis.2d 472, 477, 96 N.W.2d 840 (1959) in which the court compared the servant and independent contractor.