DONALD E. PERCY, Secretary Department of Health and SocialServices
You request my opinion as to the correct interpretation of sec.895.48, Stats., created by ch. 164, Laws of 1977, establishing a general "good Samaritan" law applicable to all persons rendering emergency medical care. Section 895.48, Stats., states:
 CIVIL LIABILITY EXEMPTION: EMERGENCY CARE. Any person who renders emergency care at the scene of any emergency or accident in good faith shall be immune from civil liability for his or her acts or omissions in rendering such emergency care. This immunity does not extend when employes trained in health care or health care professionals render emergency care for compensation and within the scope of their usual and customary employment or practice at a hospital or other institution equipped with hospital facilities, at the scene of any emergency or accident, enroute to a hospital or other institution equipped with hospital facilities or at a physician's office."
Initially, it must be noted that by ch. 164, Laws of 1977, the Legislature repealed prior sec. 441.06 (5), Stats., and amended sec. 448.03 (2)(i) and (4), Stats., under which licensed physical therapists, physician's assistants and registered nurses were rendered immune from civil liability for any good faith acts or omissions in giving emergency care at the scene of an emergency or accident. Under the new law, in contrast, the special "good Samaritan" immunity for such professionals is supplanted by a general "good *Page 219 
Samaritan" law applicable to all persons rendering on-the-scene emergency care in good faith, with certain exceptions. The questions you raise concern the scope of the stated exceptions.
The statute in broad terms first establishes a general civil immunity for persons rendering emergency care. A person does not receive the benefit of this statutory immunity:
 (1) If he or she is an employe trained in health care or is a health care professional; and
 (2) If he or she is rendering emergency care for compensation; and
 (3) If such rendering of care is within the scope of his or her usual and customary employment or practice,
whether such emergency care is given at the scene of an emergency, en route to a hospital or other institution equipped with hospital facilities, at a hospital or other such institution or at a physician's office.
As a prefatory matter, I should note that in construing a statute resort may not be had to extrinsic aids unless the statute is ambiguous. Ambiguity exists when a statute "is capable of being understood by reasonably well-informed persons in either of two or more senses." Recht-Goldin-Siegal Const. v. Dept. ofRevenue, 64 Wis.2d 303, 306, 219 N.W.2d 379 (1974).
Certain portions of sec. 895.48, Stats., are plainly ambiguous. For example, the phrase "health care professional" is neither self-defining nor defined in the statute. The scope of the phrase "usual and customary employment or practice" is similarly uncertain. Accordingly, I am of the view that the plain meaning rule is inapplicable here and that resort may be had to various extrinsic aids to statutory construction, such as the purpose of the statute, other related statutes and legislative history.
The first problem concerns the scope of the phrase "employes trained in health care or health care professionals," for it is only such individuals, under the circumstances described, who do not partake of the statutory immunity granted all other persons. It is my opinion that the Legislature, in qualifying immunity for "employes trained in health care or health care professionals," intended to underscore its *Page 220 
intention to encompass any person who is engaged in the business of providing health care. I believe the language, rather than setting up two distinct classes, merely points up the Legislature's intention that the scope of the exception is not dependent upon whether the individual is an employe or an independent practitioner or upon whether the individual provides health care as a full-time occupation or as partial completion of his or her duties.
In many cases an individual who provides assistance may be considered both an employe trained in health care and a health care professional. But to demonstrate the scope of the statute I have attempted to define the two classes separately.
The term "health care professionals," though potentially encompassing a wide range of individuals in the health care field, is capable of being defined with some precision, so it will be addressed first.
Although neither sec. 895.48, Stats., nor any other section of the statutes defines the phrase "health care professionals," ch. 655, Stats., entitled "Health Care Liability And Patient Compensation," does define the related phrase "health care provider." Section 655.001 (8), Stats., states that:
"DEFINITIONS. In this chapter:
 "(8) `Health care provider' means a medical or osteopathic physician licensed under ch. 448; a nurse anesthetist licensed under ch. 441; a partnership comprised of such physicians or nurse anesthetists; a corporation owned by such physicians or nurse anesthetists and operated for the purposes of providing medical services; an operational cooperative sickness care plan organized under ss. 185.981 to 185.985 which directly provides services through salaried employes in its own facility; or a hospital as defined by s. 140.24 (1) (a) and (c); but excluding state, county or municipal employes or federal employes covered under the federal tort claims act, as amended, while acting within the scope of their employment, and those facilities exempted by s. 140.29 (3) or operated by any governmental agency." *Page 221 
In addition, ch. 448, Stats., entitled "Medical Practices, " deals with the licensing of medical practitioners. Section 448.03
(1), Stats., provides that:
 "(1) License required to practice. No person may practice medicine and surgery, podiatry or physical therapy, or attempt to do so or make a representation as authorized to do so, without a license granted by the board."
Section 448.03 (2), Stats., provides that:
 "(2) Exceptions. Nothing in this chapter shall be construed either to prohibit, or to require a license or certificate under this chapter for any of the following:
 "(a) Any person lawfully practicing within the scope of a license, permit, registration, certificate or certification granted to practice professional or practical nursing under ch. 441, to practice chiropractic under ch. 446, to practice dentistry or dental hygiene under ch. 447, to practice optometry under ch. 449 or under any other statutory provision, or as otherwise provided by statute."
Section 448.03 (3)(b), Stats., provides that:
 "(b) No person not possessing the degree of doctor of osteopathy may use or assume the title `doctor of osteopathy' or append to the person's name the letters `D.O."'
And sec. 448.03 (3)(e), Stats., provides that:
 "(e) No person may designate himself or herself as a `physician's assistant' or use or assume the title `physician's assistant' or append to the person's name the words or letters `physician's assistant' or `P.A.' or any other titles, letters or designation which represents or may tend to represent the person as a physician's assistant unless certified as a physician's assistant by the board."
In my opinion, the above statutory definitions and proscriptions are illustrative of the scope of the term "health care professional" as used in sec. 895.48, Stats. Thus, a person is a health care professional if he or she is licensed, permitted, registered or certified under the laws of this state to practice as a medical doctor, surgeon, podiatrist, osteopath, physician's assistant, physical therapist, professional or *Page 222 
practical nurse, chiropractor, dentist, dental hygienist or optometrist within this state.
In addition, I am of the opinion that a person who is licensed under sec. 146.35, Stats., as an "emergency medical technician-advanced (paramedic)," and who practices emergency medical care as his or her profession, is to be considered a "health care professional" within the meaning of sec. 895.48, Stats. Section 146.35 (3), Stats., deals with state approval of programs:
 ". . . utilizing emergency medical technicians — advanced (paramedics) for the delivery of emergency medical care to the sick and injured at the scene of an emergency and during transport to a hospital, while in the hospital emergency department, and until care responsibility is assumed by the regular hospital staff. . . ."
In my view, "emergency medical care to the sick and injured" constitutes a form of "health care."
Moreover, I am of the opinion that a person who is licensed under sec. 146.50, Stats., as an "ambulance attendant" and who practices ambulance attendance as his or her profession is to be considered a "health care professional" for the purpose of sec.895.48, Stats. Section 146.50 (1)(C), Stats., defines "ambulance attendant" as:
 ". . . a person who is responsible for the administration of emergency care procedures, proper handling and transporting of the sick, disabled or injured persons, including but not limited to, ambulance attendants and ambulance drivers."
A somewhat different question is who are to be considered "employes trained in health care."
Chapter 111 of the Wisconsin Statutes is entitled "Employment Relations." Section 111.02 (3) of that chapter defines the term "employe" as including "any person. other than an independent contractor, working for another for hire "
An example of an "employe trained in health care" is a paramedic hired by a county or municipality to deliver emergency medical services. Section 146.35 (1), Stats., refers to the training a person must receive in order to be licensed as a paramedic by the Department of Health and Social Services: *Page 223 
 "(1) Emergency medical technician — advanced (paramedic) defined. As used in this section, `emergency medical technician — advanced (paramedic)' means a person who is specially trained in emergency cardiac, trauma and other lifesaving or emergency procedures in a training program or course of instruction prescribed by the department . . . ."
Section 146.35 (5)(b), Stats., adds that:
 "(5) Qualifications for licensure. To be eligible for an emergency medical technician — advanced (paramedic) license a person shall:
"***
 "(b) Satisfactorily complete a course of instruction prescribed by the department or present evidence satisfactory to the department of sufficient education and training in the field of emergency medical care."
Ambulance attendants are defined as persons "responsible for the administration of emergency care procedures," sec. 146.50 (1)(c), Stats., and are required to be licensed. To be eligible for a license a person must complete a prescribed course of training or present satisfactory evidence of emergency care training, sec. 146.50 (6)(b), Stats.
Given these statutory provisions, I am of the opinion that the phrase "employes trained in health care" includes those persons working for another for hire who:
1. Are licensed, permitted, registered or certified under the laws of this state to practice medicine, surgery, podiatry, osteopathy, physician's assistantship, physical therapy, professional or practical nursing, chiropractic, dentistry, dental hygiene or optometry; and/or
2. Are licensed paramedics; and/or
3. Are licensed ambulance attendants.
In addition, it has been suggested that the statutory phrase "trained in health care" may include not only the type of training undergone by the persons discussed above but also formal, first aid-type training. The dictionary definition of "first aid" makes it clear that it is a form of health care: *Page 224 
 "first aid: emergency care or treatment given to an ill or injured person before regular medical aid can be obtained." Webster's Seventh New Collegiate Dictionary, (1970, G. and C. Merriam Co.).
An example of a person who has received formal, first aid-type training is a person with Red Cross first aid certification.
I am not convinced, however, that all persons with the typical first aid training or Red Cross certification are meant to be excluded from the benefits of the immunity conferred by sec.895.48, Stats. First, the statute requires not only that one have medical training, but that one be an employe trained in health care. Conceivably, the statutory language is capable of including employes of every variety, from the stagehand at a ballet company to the head cashier at a savings and loan association. Fortunately, an alternative construction suggests itself — that only health care trained employes whose specific, paid duties include the rendering of emergency aid are exempted from the immunity conferred. Such a construction is not only more reasonable in light of the statutory language, but also more compatible with the apparent purpose of the statute, that is, to encourage persons to come to the aid of emergency victims. This purpose could be largely frustrated by exempting from "good Samaritan" immunity the great number of people who have acquired basic first aid skills but whose employment is in no way connected with these skills.
The fact that one is an employe trained in health care or a health care professional does not in itself suffice to take one out of the immunity generally conferred to those rendering emergency care. One must, in addition, be rendering such care for compensation and be within the scope of one's usual and customary employment or practice.
In determining what constitutes rendering health care "for compensation," one naturally first considers wages and salary. Section 409.104 (4), Stats., defines wages and salary as a form of compensation. Section 16.086, Stats., is entitled "Compensation." Section 16.086 (1) (e), Stats., has reference to allowances for meals and laundry as examples of compensation, and sec. 16.086 (3), Stats., deals with benefits. *Page 225 
In my opinion, a person has rendered emergency care "for compensation" if he or she has been or will be paid in money or something else of material value for rendering the care.
It is my further opinion that one is within the scope of one's usual or customary employment or practice in rendering emergency care if one is doing the kind of act one would normally be expected to do in the course of earning one's livelihood.
In sum, the statute gives immunity to all "good Samaritans" who render aid in an emergency situation, with certain exceptions. There is no immunity when a health care trained employe whose duties include the rendering of emergency care or a health care professional, as defined above, gives aid for compensation, which aid is of the kind the employe or professional usually renders in the course of his or her employment or practice, whether the emergency care is performed at the scene of an emergency, en route to a hospital or similarly equipped facility, at such a facility or at a physician's office. In short, the statute generally excludes from protection those health care practitioners who make their living or who specifically are paid for providing emergency care at the scene of an emergency or accident.
It is difficult to draw a precise line between all situations in which the immunity exists and those where it does not. Nevertheless, since you express particular concern about potential liability for certain classes of individuals, including ambulance personnel, firefighters and police officers, I will attempt to illustrate those circumstances where, in my opinion, the statutory immunity would not apply.
The statute provides no immunity where persons employed by an ambulance service, whether salaried or paid by the call, render emergency aid of a type that they would normally be expected to give, whether at the scene of an emergency, en route to a hospital facility or at the hospital facility pending transfer of care to hospital personnel. If the above conditions exist, the fact that one were so employed only on a part-time basis, or additionally employed elsewhere, would make no difference. Additionally, there is no immunity for police officers or firefighters assigned to ambulance work, assuming such assignment was made following instruction in the care of emergency victims and assuming compensation for these services. Police and fire personnel assigned to ambulance duty are performing a customary function when they render aid to accident *Page 226 
and fire victims. The fact that victims may not be charged a fee does not change the result.
In my opinion, volunteer ambulance personnel do not fall within the intended scope of the exception to sec. 895.48 immunity. Volunteers are neither paid for the care they render nor employed by the ambulance service. They freely give their services for altruistic, not pecuniary, reasons. Withholding the benefits of civil immunity from unpaid emergency volunteers would be antithetical to any concept of encouraging people to come to the aid of accident victims. Volunteer ambulance personnel paid by the call, however, though not salaried employes, are, like regular employes, compensated by the ambulance service for their work and thus should not be treated differently from regular employes. That the "employer" may have arranged his business in such a way that paid volunteers are not on his payroll, but expected to receive their compensation directly from the victim, should make no difference.
BCL:NLA