FRED A. RISSER, Chairperson Senate Organization Committee
The Senate Organization Committee has requested an opinion on whether members of the National Ski Patrol, a voluntary organization, are exempt from civil liability under section895.48 (1), Stats. (the "Good Samaritan Law"), when rendering assistance in good faith to disabled skiers at the scene of an accident.
National Ski Patrol members donate their time and equipment to organized patrols at both public and private ski hills and areas. While the ski hill operators do not consider these voluntary members to be employes, the operators generally furnish to them free lift tickets and discounts on ski equipment in pro shops operated by the ski hill. These discounts are similar to those received by members of the ski team, who are uncompensated, non-employes of the ski hills. However, the opinion request furnishes no information concerning the degree of control exercised by ski hill operators over patrol members. Nor is it indicated whether patrol members become entitled to free lift tickets and equipment discounts simply because of their membership, or if they must actually patrol the hills, or even first render aid before lift tickets and discounts become available.
Because I am unable to assume that all ski hill operators conduct their business the same way, I cannot definitively conclude whether members of the National Ski Patrol are immune from civil liability under section 895.48 (1). A dispositive opinion in this regard would require me to resolve facts, a task contrary to my policy on such matters. See 77 Op. Att'y Gen. *Page 195 
Preface at para. 3.C. The most this opinion seeks to accomplish, therefore, is to identify factors important to an analysis of a specific fact situation.
Turning first to the statutory language, section 895.48 (1) provides as follows:
 Any person who renders emergency care at the scene of any emergency or accident in good faith shall be immune from civil liability for his or her acts or omissions in rendering such emergency care. This immunity does not extend when employes trained in health care or health care professionals render emergency care for compensation and within the scope of their usual and customary employment or practice at a hospital or other institution equipped with hospital facilities, at the scene of any emergency or accident, enroute to a hospital or other institution equipped with hospital facilities or at a physician's office.
Thus, the general rule erects a barrier to civil liability for anyone who in good faith renders aid in an emergency. However, the statutory exception must be examined in order to determine whether members of the National Ski Patrol qualify for this immunity.
The exception to immunity under section 895.48 (1) may be broken down into its component parts, and exists when:
 (1) employes trained in health care or health care professionals;
(2) render emergency care;
(3) for compensation; and
 (4) within the scope of their usual and customary employment or practice.
Although the term "health care professional" is not defined in the statute, it is clear, based upon a prior opinion of this office, that members of the National Ski Patrol are not health care professionals within the meaning of the statute. 67 Op. Att'y Gen. 218, 219-22 (1978). Thus, if these members do not constitute *Page 196 
"employes trained in health care," they are immune from civil liability under the statute.
As noted in that earlier opinion, the term "employes trained in health care" is susceptible of two interpretations. On the one hand, the statutory language could be understood to include any person who is employed by another, in any capacity whatsoever, who has some training in health care. Under this construction, the availability of immunity would turn on whether the person trained in the health care was employed at the time emergency care was rendered. In the present context, that would effectively immunize members of the ski patrol who were out of work while arguably excepting from such immunity any member who, at the time emergency care is rendered, had a full- or part-time job. The unreasonableness of this construction is manifest.
Rather, as suggested by the earlier opinion, the term reasonably refers to "health care trained employes whose specific, paid duties include the rendering of emergency aid." Id. at 224. This construction advances the underlying purpose of the Good Samaritan Law — namely, to encourage persons to come to the aid of another without fear of civil liability. Unfortunately, adoption of this more reasonable interpretation does not end, but rather begins, the analysis.
It is assumed that patrol members receive specialized training, such as first aid courses and Red Cross certification, which enables them to carry out their duties. Thus, I believe they would be considered "health care trained" personnel. The question whether they fall outside the protection of section 895.48 (1) thus depends upon whether the free lift tickets and equipment discounts constitute compensation in exchange for rendering emergency care and, if so, whether they are employes.
The term "compensation" is not defined in section 895.48. Nowhere in the statutes is found a definition of "compensation" which has general applicability. Cf. secs. 102.01 (2)(am), 441.11 (1), 453.02 (6) and 454.01 (7), Stats. Thus, it is proper to refer to a dictionary to determine its common and approved *Page 197 
usage. Sec. 990.01 (1), Stats. In the present context, "compensation" includes payment or wages. Webster's SeventhNew Collegiate Dictionary at 169 (G. C. Merriam Co. 1970). "Compensation" may also be broadly construed to mean "something given or received as an equivalent for services."Random House Dictionary of the English Language at 300 (Random House, Inc. 1967).
It must be acknowledged that free lift tickets and equipment discounts are "compensation" in the broad sense of the word. Yet the exception to immunity from civil liability refers to "render[ing] emergency care for compensation." Sec. 895.48 (1), Stats. It might be argued that receiving compensation for merely patrolling ski hills, without regard to whether emergency care is in fact rendered, would be sufficient to take one outside the civil liability exemption imposed by section 895.48 (1). Yet, the plain language of the statute refers to compensation as the quid proquo for emergency care. Similarly, the first sentence of the statute contemplates the acts of "[a]ny person who renders emergency care at the scene," and not someone merely waiting to do so. Id.
It would seem, therefore, that the act of rendering such care triggers application of the statute and its exception.
Thus, free lift tickets, equipment discounts or any other sort of remuneration constitute "compensation" as that term is used in the Good Samaritan Law if their receipt is at all dependent upon the actual rendering of emergency care. For example, if free lift tickets are available only to patrol members who rendered emergency care in fact, it is compensation under the statute. Alternatively, if the same quantity of lift tickets is available to any member of the patrol, whether or not that member has occasion to administer emergency care, it is not compensation under the statute because there is no quid pro quo.
Even if one is compensated for furnishing emergency care, however, he or she may still enjoy immunity from civil liability unless also determined to be an "employe" who is "trained in health care." Surely, a passer-by who receives unsolicited money *Page 198 
as a form of gratitude from the person aided has been compensated in exchange for emergency care. As will be seen, however, the mere receipt of compensation does not by itself transform the care provider into an employe.
Like "compensation," the term "employe" is not defined in section 895.48. There are at least eight definitions of the word, different from each other to various degrees, throughout the statutes. The Legislature, had it chosen to do so, could have incorporated any one of these into the Good Samaritan Law. The fact it did not gives reason for pause in attempting to justify the selection of one definition over another. It seems more useful to note that the employment relationship represents but one form of agency, and thus to refer to that body of law in determining whether a particular individual is an employe.
In general, the law of agency distinguishes between two mutually exclusive groups, servants and independent contractors. Restatement (Second) of Agency, Title B. Torts of Servants, Introductory Note at 480 (1957), as quoted in Arsand v. City ofFranklin, 83 Wis.2d 40, 53, 264 N.W.2d 579, 585 (1978). On the one hand, an independent contractor refers to:
 [O]ne who is employed to do a piece of work without restriction as to the means to be employed, and who employs his own labor and undertakes to do the work in accordance with his own ideas or under plans furnished by the person for whom the work is done, to produce certain results required by such person.
Weber v. Hurley, 13 Wis.2d 560, 568, 109 N.W.2d 65, 69-70
(1961), quoting approvingly from 18 McQuillin, Mun. Corp. (3d ed.) sec. 53.75. A servant, on the other hand, is an employe "whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master." Restatement (Second) of Agency § 2 (1958).
What distinguishes the two from each other is the presence or absence of physical control. Saunders v. DEC International, Inc.,85 Wis.2d 70, 77, 270 N.W.2d 176, 179 (1978). Control, in turn, *Page 199 
is manifested in a variety of ways. The Restatement (Second) of Agency seeks to identify those things which, if present or absent in a given case, bear upon the question. These I have set forth in the margin.* *Page 200 
As should be evident, whether a member of the National Ski Patrol is an employe of the ski hill which he or she patrols, depending as it does upon an analysis of facts which shall certainly change from ski hill to ski hill, is incapable of a dispositive answer. Even the facts as laid out by the committee are insufficient to enable me to render a conclusive opinion. The most that can be said is each circumstance must be considered in light of the factors identified above.
If it is concluded that a patrol member is both an employe of the ski hill and also compensated as a quid pro quo for emergency services, then it must be concluded as well that the patrol member is engaged "within the scope of [his or her] usual and customary employment or practice." Sec. 895.48 (1), Stats. If these conditions exist, "the fact that one were so employed only on a part-time basis, or additionally employed elsewhere, would make no difference." 67 Op. Att'y Gen. at 225. Thus, just as volunteer ambulance personnel paid by the call are no different from other employes, such that they are not immune from civil liability, volunteer patrol members paid "by the call" by ski hill operators who oversee their activities likewise fall outside the protection of the Good Samaritan Law.
DJH:PLB
*
(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
 (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
 (b) whether or not the one employed is engaged in a distinct occupation or business;
 (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
 (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
 (f) the length of time for which the person is employed;
 (g) the method of payment, whether by the time or by the job;
 (h) whether or not the work is a part of the regular business of the employer;
 (i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business.
Restatement (Second) of Agency § 220 (2)(a)-(j) (1958), quoted inArsand, 83 Wis.2d at 46 n. 4. See also Ryan v. Department of Taxation,242 Wis. 491, 498-99, 8 N.W.2d 393 (1943). *Page 201